PEOPLE *v.* WABASH RAILWAY CO.

1. NUISANCE—CRIMINAL PROSECUTION—EVIDENCE—SUFFICIENCY.
   On a prosecution of a railroad for maintaining a nuisance
   consisting of a crane for loading and unloading cars, evi-
   dence *held*, sufficient to show that the neighborhood was
   not residential in character, but was a railroad terminal.

2. SAME.
   A public nuisance is not created by the operation day and
   night of a crane used in loading and unloading cars at a
   railroad terminal, which is made necessary by the de-
   mands of the public.

Error to recorder's court of Detroit; Jeffries, J.
Submitted June 7, 1917. (Docket No. 10.) Decided
July 26, 1917.

The Wabash Railway Company was convicted of
maintaining a nuisance, and sentenced to pay a fine
of $100. Reversed, and no new trial granted.

*Beaumont, Smith & Harris,* for appellant.

*Harry J. Dingeman,* Corporation Counsel, and
*Thomas P. Penniman,* Assistant Corporation Counsel,
for the people.

KUHN, C. J. The defendant was convicted in the
recorder's court of the city of Detroit upon a com-
plaint which charged:

That the defendant on the 29th day of December,
1916, did "then and there unlawfully and wilfully
allow a nuisance to exist on said premises, consisting
of the operation of a crane for the loading and unload-
ing of cars, which operation caused a loud and con-
tinuous noise, to the serious annoyance of the neigh-
borhood."

The plea was not guilty, and the trial was by jury.

The crane in question is of an elaborate mechanical construction of the overhead type capable of operating a clam shell or bucket adapted to the unloading of coal from cars. It is about 75 feet high, and travels about 150 feet in its work over a radius of 83 to 84 feet. It crosses five tracks, picks up the coal from the cars, and carries it to the tenders of the engines. It also handles the cinders from the cinder pits. There are six of these pits under the incoming tracks about 15 feet deep, 30 feet long, and the width of two tracks. These pits are filled with water, and the cinders are dumped into them from locomotives. From there they are picked up by the crane and loaded into cinder cars. The crane was constructed in 1913 according to a plan and device approved by the engineers of the defendant railroad as providing the best crane to be erected at this point, taking into consideration every factor of railroad operation; it being considered the most modern device in use at that time.

An idea of the location of the crane with reference to the surrounding property can be obtained from the annexed sketch of the locality.

It shows roughly the roundhouse, machine shop, crane, and tracks, and the residences of each one of the people complaining. The crane itself is represented by an oblong figure just northerly of the railroad tracks and westerly of Harbaugh avenue just south of Cedar street. Westerly of the crane appears another parallelogram representing a machine shop, storeroom, boiler room, and certain offices. Still westerly of the machine shop, but close thereto, is the Detroit roundhouse of the Wabash Railway Company, devoted to the customary use to which a railroad roundhouse is put. This roundhouse is continually in active operation, and the crane is located adjoining thereto, so that the loading can be accomplished when necessary on incoming and outgoing locomotives at a

point adjacent to where they are stored and repaired. The whole plant is adjacent to and convenient to the main freight and switching yards of the Wabash, which are just across Harbaugh avenue to the east.

It further appears that the whole territory surrounding the location of the crane is a network of railroad tracks, and in this respect has not changed for a period of 30 years or more. South of the roundhouse and crane are five tracks outside of the tracks that are used in connection with the roundhouse proper, and all of the Wabash and Pere Marquette trains entering the city pass this point; the Delray station of these two roads being just across the tracks to the

south and a little. west of the roundhouse. The testi-
mony showed that a great number of trains pass over
these tracks during each 24 hours, as well as over the
main tracks of the Michigan Central and Lake Shore
roads operating between Detroit and Toledo, which
tracks are just to the north as shown by the sketch.
South of the west tracks and of the crane is located the
manufacturing plant of the Michigan Gray Iron Cast-
ings Company and between this plant and Harbaugh
avenue is the new and large plant of the Detroit Steel
Products Company. Just northerly of the crane and
machine shop runs Cedar street, east and west, and
fronting on this street facing the south reside most
of the parties who appeared to testify for the people
in this matter. In the triangle bounded by Harbaugh
avenue on the east, Cedar street on the south, and
the Michigan Central Railroad tracks on the north-
west there are only ten houses, and across from Har-
baugh avenue and east of Cedar street there are only
four houses.

The trial judge in a carefully stated charge submit-
ted to the jury the question as to what was the pre-
ponderating character of the neighborhood, whether
it was residential in character,. and instructed them
that unless they found it was of that character, so as
not to make the noise of the operation of the crane
one of the incidents of a manufacturing or a like dis-
trict, their verdict would be not guilty.

A careful examination of this record and of the
evidence offered on the trial satisfies us that the court
erred in submitting this question to the jury and
should have directed a verdict for the defendant as
requested by it on the ground that under the undis-
puted proofs the preponderating character of this
neighborhood is not residential, but that it is a rail-
road terminal, and was such at the time that the
people now living there sought the locality in which

to live. The character of the neighborhood is not determined by the facts as to whether or not there are residences in this neighborhood, but it is rather, What is the preponderating character of this neighborhood? It is through this section of the city that the main arteries of railroad traffic enter the great and growing metropolis of this State. An examination of the maps which were submitted and introduced as exhibits and made a part of this record discloses that this is clearly a railroad terminal. The operation of railroad trains in this locality has been incessant, and the erection of this crane must be said to have only added another facility demanded by the increase of this terminal and the tremendous growth of this city. We are therefore satisfied that the neighborhood itself cannot be said to be a residential neighborhood, since the great preponderance of its activity is railroading and manufacturing, and the people's witnesses who came to reside there must be held to have come knowing that their homes would be in the center of one of the most congested railroad terminals of Detroit. Here the main arteries of the railroads which run between Detroit and Toledo and all the trains of the Pere Marquette and Wabash systems converge to make the station of Delray, which has been known for years as a railroad junction.

We are satisfied that the operation of the crane by day and night was made necessary by the demand of the public upon the facilities of the railroad, and that under these circumstances it cannot be said that a public nuisance was created.

Being of the opinion, as before stated, that the trial judge should have directed a verdict for the defendant, the judgment will be reversed, and no new trial granted.

STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.