## PEOPLE v LYONS

Docket No. 135768. Submitted January 8, 1992, at Detroit. Decided August 3, 1992, at 9:15 A.M. Leave to appeal sought.

Dashawn E. Lyons, age sixteen, pleaded guilty in the Detroit Recorder's Court, Dalton A. Roberson, J., of first-degree murder and possession of a firearm during the commission of a felony. After a hearing, the court decided to sentence the defendant as a juvenile offender by placing him on probation and committing him to the care of the Department of Social Services for rehabilitation. The prosecution appealed, claiming that the defendant should have been sentenced as an adult offender.

The Court of Appeals *held:*

The prosecution proved by a preponderance of the evidence at the hearing that the defendant should be sentenced as an adult. The trial court clearly erred in finding otherwise and abused its discretion in sentencing the defendant as a juvenile.

The decision whether to sentence a minor as a juvenile or as an adult rests within the discretion of the trial court, after making findings of fact and conclusions of law in support of either choice. Under MCL 769.1(3); MSA 28.1072(3); MCR 6.931(E)(3), the court must consider:

—the juvenile's prior record, character, physical and mental maturity, and pattern of living;

—the seriousness and circumstances of the offense;

—whether the offense is part of a pattern of offenses leading to a determination that the juvenile is not amenable to treatment or, if amenable, that the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of others in the treatment program;

—whether, despite the potential for treatment, the nature of the delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of twenty-one;

—whether the juvenile is more likely to be rehabilitated by services and facilities available in adult programs;

—the best interests of the public welfare and the protection of the public security.

Order of probation vacated and case remanded for sentencing as an adult.

MICHAEL J. KELLY, J., dissenting, stated that the trial court

did not clearly err with respect to its findings of fact at the hearing and did not abuse its discretion in deciding to sentence the defendant as a juvenile.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Gerald T. Celeskey,* for the defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and JANSEN and T. J. LESINSKI,* JJ.

JANSEN, J. Defendant, a sixteen-year-old male, pleaded guilty before Detroit Recorder's Court Judge Dalton A. Roberson of first-degree murder, MCL 750.316; MSA 28.548, and of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Thereafter, a juvenile sentencing hearing was conducted and the trial court concluded, in accordance with MCL 769.1(3); MSA 28.1072(3), that defendant should be sentenced as a juvenile instead of as an adult. Defendant was then committed to the care of the Michigan Department of Social Services in accordance with the Youth Rehabilitation Services Act, MCL 803.301 *et seq.*; MSA 25.399(51) *et seq.* The prosecution now appeals as of right, and we reverse.

We first address what we feel to be an inappropriate procedure utilized in the taking of defendant's plea by the trial court. It appears, on the basis of our review of the record, that an obvious use of forum shopping was employed by defendant

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

and sanctioned by the trial court. Defense counsel stated that offering a plea of guilty to the charge of first-degree murder was "an unusual situation," and that defense counsel hoped to convince the trial court at sentencing to place defendant in the juvenile system, as opposed to the adult system. The case, originally assigned to Judge James E. Roberts by blind draw, was inexplicably transferred to Judge Roberson. We view this as forum shopping in order to obtain the leniency of a juvenile sentence from Judge Roberson. We cannot condone such a course of action, and we caution the trial court to refrain from approving the use of such forum shopping in the future.

The incidents leading to defendant's conviction occured on November 27, 1989, at the home of the victim, Douglas Thomas, which is located in the City of Detroit. Defendant was selling crack cocaine out of Thomas' house. On the night in question, defendant and Thomas were together at the house. At some point in the evening, defendant allegedly attempted to rob Thomas of his wallet. A struggle ensued, and defendant shot Thomas five times in the face. Thomas subsequently died. At the time of the shooting, defendant was sixteen years old.

The sole issue raised by the prosecution on appeal is whether the trial court erred in sentencing defendant as a juvenile offender instead of as an adult offender. Initially, we note that there have been no reported decisions discussing the appropriate standard of review of a trial court's determination whether to sentence a minor as a juvenile or as an adult. It is our opinion that such a decision should be reviewed for an abuse of discretion under the customary sentence review standard. The judicial discretion involved in such a decision is so inextricable from the quantum

sentence as to compel the same standard of review.

The sentencing of a criminal defendant rests exclusively within the province of the sentencing court, which sees and hears the defendant and is uniquely positioned to evaluate the defendant's credibility, character, and potential for rehabilitation. *People v Coles,* 417 Mich 523, 536-538; 339 NW2d 440 (1983). Because a subjective evaluation of those traits is usually necessary, appellate courts generally agree that punishment is to be left to the trial court's discretion. *People v Howell,* 168 Mich App 227, 232; 423 NW2d 629 (1988). Appellate review of sentencing is limited to determining whether an abuse of discretion has occurred. *People v Milbourn,* 435 Mich 630, 636; 461 NW2d 1 (1990); *People v Poppa,* 193 Mich App 184; 483 NW2d 667 (1992). In this case, the prosecution contends that it proved, by a preponderance of the evidence, that defendant should be sentenced as an adult, and that the trial court abused its discretion in sentencing defendant as a juvenile. We agree with the prosecution, and hold that the trial court abused its discretion in sentencing defendant as a juvenile.

Pursuant to MCL 769.1(3); MSA 28.1072(3), the trial court must conduct a juvenile sentencing hearing to determine if the best interests of the juvenile and the public would be better served by placing the minor in the custody of the juvenile offender system or by sentencing the minor as an adult. See also MCR 6.931(A). The trial court is required to consider the following factors in making its determination, giving weight to each as appropriate under the circumstances:

　　(a) The prior record and character of the juvenile, his or her physical and mental maturity, and his or her pattern of living.

(b) The seriousness and the circumstances of the offense.

(c) Whether the offense is part of a repetitive pattern of offenses which would lead to one of the following determinations:

(i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security. [MCL 769.1(3); MSA 28.1072(3); see also MCR 6.931(E)(3).]

The prosecutor has the burden of proving, by a preponderance of the evidence, that the best interests of the juvenile and the public would be served by sentencing the juvenile as an adult offender. MCR 6.931(E)(2). The trial court must make findings of fact and conclusions of law in support of a decision for juvenile probation and commitment or for sentencing as an adult offender. MCL 769.1(5); MSA 28.1072(5); MCR 6.931(E)(4). The trial court's findings of fact are reviewed under the clearly erroneous standard of review. MCR 2.613(C). Findings of fact are clearly erroneous if, after review of the entire record, this Court is left with a definite and firm conviction that a mistake has been made. *People v Gistover,* 189 Mich App 44, 46; 472 NW2d 27 (1991).

In this case, the trial court made the following

pertinent findings of fact: (1) defendant was physically and mentally mature; (2) the offense committed by defendant was of a serious nature; (3) defendant's behavior was not likely to disrupt the rehabilitation of other juveniles in the treatment program; (4) defendant's behavior was not likely to render him more dangerous to the public at age twenty-one; (5) defendant was more likely to be rehabilitated by the services and facilities available in a maximum security juvenile program than by the services available in an adult program; (6) the best interests of defendant and the public would be served by placing defendant on probation and committing him to a juvenile facility; and (7) the prosecution had failed to prove, by a preponderance of the evidence, that the best interests of the juvenile and the public would be served by sentencing defendant as an adult.

After reviewing the testimony presented at the juvenile sentencing hearing, we are of the opinion that the trial court's findings of fact were clearly erroneous and we are left with a definite and firm conviction that a mistake has been made by the trial court. The trial court abused its discretion in placing defendant in the juvenile offender system rather than in the adult offender system.

The evidence elicited at the juvenile sentencing hearing indicates that defendant has a record of being troublesome. In June 1988, defendant was arrested and found guilty of possession of cocaine. He was placed in temporary custody of the juvenile court, and was placed on intensive probation. In November 1988, defendant violated the terms of his probation by being truant from the family home. During this time, defendant was living in various crack houses. Defendant was placed in the Flint Detention Center, a maximum security facility, where his adjustment was described as poor.

Defendant was disruptive and given to attempts to impress and tease other detainees.

Subsequently, defendant was transferred to Boysville of Michigan, where his adjustment was described as fair. Defendant admitted drug use and he participated in group therapy. However, defendant escaped following an outing to a Detroit Tigers game. He was thereafter arrested for carrying a concealed weapon and for possessing cocaine, and was again placed in the Flint Detention Center. Defendant again escaped by jumping out of the dining room window with another juvenile.

Defendant was on escape status at the time he committed the present offense. Defendant was placed in the Wayne County Youth Home following his apprehension for the present offense, and he again escaped from the home in the company of two other youths.

Regarding defendant's physical and mental maturity, defendant was characterized as being competent and aware of his surroundings. Defendant is intelligent, mature, and capable of performing adequately in an academic setting. However, defendant has been suspended from school six times for fighting, and has, by his own admission, engaged in drug dealing for some time. Defendant rented a car, at the age of fourteen or fifteen, to make drug deliveries, and he would flaunt his money and beeper in front of schoolmates. At the time of Thomas' death, defendant was selling crack cocaine out of Thomas' house.

Several of the witnesses indicated that, upon interviewing defendant, they found that he expressed no remorse for killing Thomas. One witness found defendant to be a "cold person," while another stated that defendant "appeared that he was almost like proud of the fact that this happened," and that defendant was "excited in talking

about it." Further testimony indicated that defendant had a need to exert power over others and had no regard for authority.

The seriousness of the offense, the shooting of Thomas five times in the face from close range, does not require extensive elaboration. The trial court noted that this was a serious offense, and we could not agree more.

Concerning whether defendant is amenable to treatment, we find, on the basis of our review of the record, that he is not. Emphasis was placed on the fact that defendant adjusted well to the treatment he received at Boysville. However, of more importance is the conduct of defendant after his stay at Boysville. Defendant escaped from Boysville, and was subsequently apprehended and charged with carrying a concealed weapon and with possessing cocaine. Defendant was returned to the Flint Detention Center, from which he escaped after a two-week stay. Defendant then shot Thomas while on escape status. Following his detention for the killing of Thomas, defendant escaped from the youth home.

These facts are consistent with the opinion of Firoza Van Horn, an employee of the Detroit Recorder's Court Clinic and a holder of a master's degree in social work and psychology, who testified that defendant "was not interested in any kind of program that would help him change." It was Van Horn's opinion that defendant would not be amenable to treatment and that he was resistant to therapy.

We also believe, contrary to the trial court's finding, that defendant would disrupt the rehabilitation of other juveniles in the treatment program. During school, defendant would flaunt his money and beeper. Defendant, during a stay at the youth home, was overheard saying that when he got out

of the home he was "going to be the big dope man. I'm going to have all you base heads working for me." Defendant was also overheard saying how possessing a gun in the dope trade was a necessity.

Defendant's behavior was described as disruptive, and he was given to attempts to impress and tease other juvenile detainees. Defendant preyed on those who were not knowledgeable about illicit drugs, and he projected blame for his actions onto others. Defendant has been suspended from school on six occasions for fighting, he has no regard for authority, and he provokes other juveniles into negative behavior. Defendant was characterized as being "very manipulative, impulsive," and as being a leader, which would enable him to create disruption if placed within the juvenile system. Defendant has a low frustration level and, if subjected to too much stress, would rebel, attack, or fight.

In addition, we believe that defendant would be dangerous to the public if released at the age of twenty-one. Such a conclusion is supported by the testimony of various witnesses who indicated that defendant would pose a threat to the community upon his release at that age because of his lack of remorse over the killing of Thomas, his prior involvement in drug trafficking, his belief that a gun is necessary in the drug trade, his prior hostile and aggressive behavior, and his disinterest in attempting any type of personal change. This conclusion is further supported by the fact that after defendant showed modest improvement following his stay at Boysville, he again reverted to delinquent behavior. In fact, Van Horn testified that defendant would conform his behavior to the rules, but then would revert to his prior deviant behavior.

It is also unlikely that defendant could be reha-

bilitated by the services provided in the juvenile system as opposed to those of the adult system. Testimony indicated that defendant was not interested in receiving treatment or in being in any program that would help him change his behavior. Defendant is manipulative and impulsive, and has problems with authority figures and with following rules. Defendant has had several chances at reformation within the juvenile system, and on each occasion has escaped from the facility at which he was housed. This includes an escape from the Flint Detention Center, a maximum security facility. We simply cannot conclude, as did the trial court, that defendant is more likely to be rehabilitated within the juvenile system as opposed to the adult system.

It is our opinion, after reviewing the record, that the best interests of the public welfare and the protection of the public security would best be served by sentencing defendant within the adult system. We conclude that the trial court's decision to place defendant in the custody of the juvenile offender system instead of sentencing him as an adult constituted an abuse of discretion.

Therefore, we vacate the trial court's order of probation and commitment, and we remand the case to the trial court for sentencing as an adult. We do not retain jurisdiction.

T. J. LESINSKI, J., concurred.

MICHAEL J. KELLY, P.J. *(dissenting)*. I respectfully dissent. I would affirm. I agree that the standard of review is for an abuse of discretion. For me, it is a Hobson's choice, one that is too close to call, and I therefore cannot find an abuse of discretion.

The juvenile sentencing alternative of incarcera-

tion until the age of twenty-one is not a sufficient societal response to the viciousness of the crimes committed, and yet the adult alternative of mandatory life imprisonment without the possibility of parole for a sixteen-year-old is so enormously retributive as to strain any sentencing judge's Solomonic powers of disposition. Unfortunately there is no potential third alternative, such as that recently fashioned by the Supreme Court in *People v Bullock,* 440 Mich 15; 485 NW2d 866 (1992).

In this case, the trial court found that: (1) defendant was physically and mentally mature; (2) the offense was of a serious nature; (3) defendant's behavior was not likely to disrupt the rehabilitation of other juveniles in the treatment program; (4) defendant's behavior was not likely to render him dangerous to the public at age twenty-one; (5) defendant was more likely to be rehabilitated through the services and facilities available in a maximum security juvenile program rather than through the services available in an adult program; (6) the best interests of defendant and the public would be served by placing him on probation and committing him to a juvenile facility; and (7) the prosecution had failed to prove, by a preponderance of the evidence, that the best interests of defendant and the public would be served by sentencing him as an adult.

After reviewing the testimony presented at the juvenile sentencing hearing, I do not believe that the trial court's findings of fact were clearly erroneous, and therefore I can find no abuse of discretion. Although there was conflicting testimony concerning a number of the factors, there is support in the record for each finding made by the trial court. Obviously, the decision is a close one,

but the trial court's benefit of seeing and hearing the defendant and the witnesses on both sides of the issues is persuasive.

I would affirm.