PEOPLE v MILLER

Docket No. 145089. Submitted November 17, 1992, at Detroit. Decided
     May 17, 1993, at 9:05 A.M. Leave to appeal sought.

     Cortez Miller, a minor, pleaded guilty in the Recorder's Court of
     Detroit, Dalton A. Roberson, J., of first-degree murder, assault
     with intent to rob while armed, and possession of a firearm
     during the commission of a felony. Following an evidentiary
     hearing, the court found that the prosecution had failed to
     prove that it would be in the best interest of the defendant that
     he be sentenced as an adult, determined that he should be
     sentenced as a juvenile, and ordered him to be placed on
     probation and held in confinement until twenty-one. The prose-
     cutor appealed, arguing that the court erred in sentencing the
     defendant as a juvenile.

     The Court of Appeals held:

     1. The Court of Appeals reviews for clear error a sentencing
     court's findings of fact concerning the statutory factors that
     must be considered in determining whether to sentence a
     minor as a juvenile or as an adult. A sentencing court's
     findings are clearly erroneous if, after a review of the entire
     record, the Court of Appeals is left with a firm and definite
     conviction that a mistake has been made.

     2. Although none of the statutorily required witnesses recom-
     mended that the defendant be sentenced as an adult, the
     evidence on the record, when considered in light of the statu-
     tory criteria, establishes that the best interests of the defendant
     and the public would be served by sentencing the defendant as
     an adult. It is clear that the trial court's findings were clearly
     erroneous and that sentencing the defendant as an adult is in
     the best interests of the public welfare and the protection of
     public security.

     3. Because felony-firearm is not one of the enumerated felo-
     nies in the statute that grants automatic waiver of jurisdiction
     over a juvenile, the Recorder's Court did not have jurisdiction
     to accept the defendant's plea of guilty of felony-firearm. Ac-
     cordingly, that conviction is vacated.

     Reversed and remanded.

     MURPHY, J., concurring in part and dissenting in part, stated

that the felony-firearm conviction should be vacated but that the trial court's findings and determination with respect to sentencing the defendant as a juvenile should be affirmed, because the findings of the trial court are not clearly erroneous and the ultimate decision to sentence the defendant as an adult was not an abuse of discretion.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* for the people.

*Kraizman & Kraizman* (by *Jack J. Kraizman*), for the defendant.

Before: DOCTOROFF, C.J., and MURPHY and CAV-ANAGH, JJ.

CAVANAGH, J. Defendant pleaded guilty of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to rob while armed, MCL 750.89; MSA 28.284, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to juvenile probation and confinement until age twenty-one. In this appeal, the prosecution claims that the trial court erred in sentencing defendant as a juvenile. We agree and reverse. In addition, we vacate defendant's felony-firearm conviction.

Pursuant to MCL 769.1(3); MSA 28.1072(3), a court having jurisdiction over a juvenile must conduct a hearing to determine whether the best interests of the juvenile and the public would be served by placing the juvenile on probation or by sentencing the juvenile as an adult. In making this determination, the trial court must consider:

(a) The prior record and character of the juve-

nile, his or her physical and mental maturity, and his or her pattern of living.

(b) The seriousness and the circumstances of the offense.

(c) Whether the offense is part of a repetitive pattern of offenses which would lead to 1 of the following determinations:

(i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security.

The prosecution bears the burden of establishing by a preponderance of the evidence that the best interests of the juvenile and the public would be served by imposing a sentence against the juvenile as though the juvenile was an adult offender. MCR 6.931(E)(2). The trial court must make findings of fact and conclusions of law. MCR 6.931(E)(4).

At the juvenile sentencing hearing, "[t]he court shall receive and consider the presentence report prepared by the probation officer and the social report prepared by the department of social services." MCR 6.931(E)(1). A social report is defined as "the written report on a juvenile for use at the juvenile sentencing hearing prepared by the department of social services as required by section 4 of the Juvenile Facilities Act, 1988 PA 73, MCL 803.224; MSA 25.399(224)." MCR 6.903(K).

Under § 4(1) of the Juvenile Facilities Act, the Department of Social Services must "inquire into the antecedents, character, and circumstances of the juvenile, and shall report in writing to the court prior to the juvenile's sentencing." MCL 803.224(1); MSA 25.399(224)(1). A report must include:

> (a) An evaluation of and a prognosis for the juvenile's adjustment in the community based on factual information contained in the report.
>
> (b) A recommendation as to whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.
>
> (c) A recommendation as to what disposition is in the best interests of the public welfare and the protection of the public security. [MCL 803.224(2); MSA 25.399(224)(2).]

When drafting a presentence investigation report, the probation officer must also inquire "into the antecedents, character, and circumstances of the person" and include in a report "an evaluation of and a prognosis for the person's adjustment in the community" and a "specific written recommendation for disposition based on the evaluation and other information." MCL 771.14 subds (1), (2)(a), and (2)(d); MSA 28.1144 subds (1), (2)(a), and (2)(d).

In reviewing a court's decision to sentence a juvenile under the provisions of the statute, this Court first evaluates for clear error the sentencing court's findings with regard to each of the enumerated factors in accordance with the standard mandated by MCR 2.613(C). *People v Passeno*, 195 Mich App 91, 103; 489 NW2d 152 (1992). The trial court's findings are clearly erroneous if, after a review of the entire record, the appellate court is

left with a firm and definite conviction that a mistake has been made. *Id.*

In this case, although we will concede that none of the statutorily required witnesses *recommended* adult disposition, we cannot conclude that the prosecution failed to present any affirmative evidence in support of sentencing defendant as an adult. In our opinion the prosecution did produce evidence that, when considered in light of the statutory criteria, established that the best interests of the defendant and the public would be served by sentencing him as though he was an adult.

At the sentencing hearing, defendant's probation officer testified that defendant had been placed on probation on November 13, 1989, after being adjudicated guilty of possession with intent to deliver cocaine. Evidence was also presented that defendant had been charged with first-degree criminal sexual conduct involving a six-year-old in 1985 and with felonious assault and felony-firearm in 1988.

After being placed on probation for the cocaine offense, defendant failed to report as required, failed to return a contract that was supposed to be drafted by him and his parents, and was thrown out of school for fighting. Less than three months after being placed on probation, the instant offense occurred. The evidence also revealed that defendant came from a dysfunctional family and that he was often thrown out of the house by his grandmother, a chronic alcoholic with whom he lived.

There was also evidence that defendant's "grasp of social conventionality and social judgment is impaired . . . [that he] is rebellious, resentful and nonconforming [, that his] [i]mpulse control is poor and he lacks frustration tolerance . . . [, and that] [h]is potential for violence is real." He "demon-

strates a lack of control and discipline in respecting the lives of others or the consequences of his behavior. He is prone toward violence and is greatly influenced by the negative, antisocial and criminal behavior of his friends."

In light of the first statutory criterion, which requires consideration of the defendant's prior record, mental maturity, pattern of living, and character, we can only conclude that the prosecution did submit evidence concerning these factors. And we are firmly convinced that the trial court erred in determining that these aspects of the defendant's life had not been fully developed at the sentencing hearing.

With regard to the seriousness of this offense, the second statutory criterion, the extent of defendant's involvement was carefully established on the record, and the trial court erred in not taking all of these circumstances into consideration. According to the evidence in the record, while defendant was not the one who actually fired the fatal shots, he admittedly set out on a mission to steal a car at gunpoint and provided the murder weapon. Moreover, a witness who saw the defendant earlier on the evening of the murder testified that in response to a codefendant's remark that they were going to "check somebody in," the defendant brandished his handgun and discharged it into the air. Furthermore, there was testimony that before the shooting, the defendant had remarked that he was going to kill someone and take their car. Immediately thereafter, the defendant tried to steal, and then fired upon, an occupied Chrysler automobile. The shot struck the driver's door just inches below the window. The testimony also revealed that it was the defendant who suggested that a tree be used to slow down the vehicles and that he helped place one in the road.

The prosecution also presented evidence that the crimes committed in this case were part of a repetitive pattern of offenses that would support a determination that defendant either would not be amenable to treatment or, if amenable, would be disruptive to others in a treatment program. Defendant had been adjudicated less than three months earlier for possession with intent to deliver, had performed poorly while on probation, had committed a separate armed assault just before the murder, had been kicked out of three schools for fighting, and was disruptive while housed at the Wayne County Youth Home. In light of this evidence, we are firmly convinced that the trial court erred in determining that defendant was amenable to treatment.

With respect to whether defendant would pose a danger to the public, given his assaultive and criminal history, the seriousness of the offense, and the psychological indications that he is resistant to change, the evidence indicates that the nature of his delinquent behavior is likely to render him dangerous to the public if released at age twenty-one. A finding to the contrary is clearly erroneous.

With respect to the testimony and the reports required from the probation officer and the Department of Social Services under MCR 6.931(E)(1), the scope of the recommendations offered by these witnesses has been delineated by the statutes that mandate their appearances. Those witnesses appearing under § 4 of the Juvenile Facilities Act must limit their recommendations to where "the juvenile is more likely to be rehabilitated" and to what disposition "is in the best interests of the public welfare and the protection of the public security." MCL 803.224(2); MSA 25.299(224)(2). Only the probation officers are required to give a

recommendation for disposition on the basis of their evaluations and other information.

To facilitate the recommendation and evaluation process, we suggest a stipulated statement of facts be submitted to the witnesses in advance of their reports and testimony. Hopefully, if this step is taken, all the witnesses will then be equally apprised of the defendant's background and involvement in the offense so as to avoid the problems that arose here.

For all of the reasons explained above, we are convinced that sentencing the defendant as an adult is in the best interests of the public welfare and the protection of the public security.

Further, although not raised by either party, we note that the automatic waiver statute that grants the Recorder's Court and circuit courts jurisdiction of certain enumerated life felonies does not grant the court ancillary jurisdiction with respect to defendant's felony-firearm charge. *People v Spearman,* 195 Mich App 434, 443; 491 NW2d 606 (1992). Because the trial court did not have jurisdiction to accept defendant's plea of guilty to the charge, we vacate defendant's felony-firearm conviction.

Reversed and remanded for further proceedings. Defendant's conviction of possession of a firearm during the commission of a felony is vacated.

DOCTOROFF, C.J., concurred.

MURPHY, J. *(concurring in part and dissenting in part).* I concur in part and dissent in part. I would vacate defendant's conviction of possession of a firearm during the commission of a felony and affirm the judgment of the trial court in all other respects.

On February 8, 1990, Benjamin Gravel was shot

and killed while driving on Clairpointe Road in the City of Detroit. Defendant and a group of other young men were attempting to steal a car and had placed a tree in the road to cause a car to stop. At one point, defendant fired a shot at a car, barely missing the driver. When Mr. Gravel's car pulled up, Kermit Haynes, one of the young men in the group, ordered Mr. Gravel to get out of the car. As Mr. Gravel drove away, Haynes fired shots at the driver's side of the car, killing Mr. Gravel.

At the time of the shooting, defendant was fifteen years old. The Detroit Recorder's Court acquired jurisdiction over defendant pursuant to the automatic waiver provisions of MCL 764.1f; MSA 28.860(6) and MCL 600.606; MSA 27A.606. After defendant pleaded guilty of the charges, the trial court conducted a dispositional hearing pursuant to MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(A) to determine if the best interests of the defendant and the public would be served by sentencing him as a juvenile or as an adult. In making this determination, the trial court was required to consider the criteria of MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(E)(3) and give each criterion its appropriate weight under the circumstances.

During the hearing, Firoza Van Horn, a clinical psychologist, testified concerning her evaluation of defendant and recommended that defendant be placed within the juvenile system. Similarly, Thomas Doran, a social worker with the Michigan Department of Social Services, recommended that defendant be placed within the juvenile system. Francis Gibson, a probation officer with the Michigan Department of Corrections who had prepared the presentence investigation report, also recommended that defendant be placed in a juvenile facility. Similarly, Dr. Karen Clark, a psychologist,

testified that she performed a psychological evaluation of defendant and recommended that he be placed within the juvenile system. At the conclusion of the hearing, the trial court sentenced defendant to juvenile probation and committed him to the Department of Social Services for confinement in a proper institution until he reaches age twenty-one.

The prosecution challenges the trial court's decision to sentence defendant as a juvenile. The prosecution argues that the trial court clearly erred in giving credence to the opinions of the testifying experts that defendant should be sentenced as a juvenile. This Court will not set aside the trial court's findings of fact unless clearly erroneous. MCR 2.613(C); *People v Buck,* 197 Mich 404, 425; 496 NW2d 321 (1992); *People v Passeno,* 195 Mich App 91, 103; 489 NW2d 152 (1992); *People v Lyons,* 195 Mich App 248, 252; 489 NW2d 218 (1992). This Court then reviews the trial court's ultimate decision to sentence the defendant as a juvenile or as an adult for an abuse of discretion. *Buck, supra; Passeno, supra,* 103-104. After reviewing the record, I believe that the trial court's findings in reliance upon the testimony of the witnesses were supported by the ample evidence on the record and were not clearly erroneous. I would also note the trial court's special opportunity to judge the credibility of the witnesses who appeared before it. MCR 2.613(C).

The prosecution also argues that the trial court erroneously found that the prosecution failed to present any affirmative evidence that defendant should be sentenced as an adult. Pursuant to MCR 6.931(E)(2), the burden is on the prosecutor to establish by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing a juvenile defen-

dant as an adult. I agree with the trial court that the prosecution must do more than demonstrate that defendant is guilty of a serious offense for which adult punishment is permitted. The prosecution in this case did not demonstrate defendant's potential either for rehabilitation or for harm to society, and instead focused only on the seriousness of the offense, which while one consideration, is not the sole consideration in determining whether defendant should be sentenced as an adult. I would therefore hold that the trial court correctly concluded that the prosecution failed to prove by a preponderance of the evidence that defendant should be sentenced as an adult and that the ultimate decision to sentence defendant as a juvenile was not an abuse of discretion.

I agree with the majority that although not raised by either party, the automatic waiver statute does not grant the court ancillary jurisdiction to try defendant for felony-firearm. *People v Spearman,* 195 Mich App 434, 443; 491 NW2d 606 (1992). See also *People v Deans,* 192 Mich App 327, 330-331; 480 NW2d 334 (1991). I would therefore vacate defendant's felony-firearm conviction. In all other respects, I would affirm the judgment of the trial court.