PEOPLE v LYONS (ON REMAND)

Docket No. 163865. Submitted November 8, 1993, at Detroit. Decided February 7, 1994, at 10:00 A.M. Leave to appeal sought.

Dashawn E. Lyons pleaded guilty in the Recorder's Court for the City of Detroit, Dalton A. Roberson, J., of first-degree murder and possession of a firearm during the commission of a felony. After a hearing, the court sentenced the defendant as a juvenile offender by placing him on probation and committing him to the care of the Department of Social Services for rehabilitation. The prosecution appealed, claiming that the defendant should have been sentenced as an adult offender. The Court of Appeals, JANSEN and T. J. LESINSKI, JJ. (MICHAEL J. KELLY, P.J., dissenting), vacated the order of probation and commitment, and remanded the case to the trial court for sentencing as an adult. 195 Mich App 248 (1992). The Supreme Court, in lieu of granting leave to appeal, vacated the judgment of the Court of Appeals and remanded the case to the Court of Appeals for reconsideration, finding that the defendant did not receive the effective assistance of appellate counsel. 442 Mich 894 (1993).

On remand, the Court of Appeals *held:*

1. It is not appropriate for the Court of Appeals, in reviewing the trial court's factual findings and its ultimate decision to sentence the defendant as a juvenile offender, to consider reports concerning the defendant that were made after the trial court made its decision to sentence the defendant as a juvenile offender.

2. The trial court's factual findings at the juvenile sentencing hearing were clearly erroneous and leave the Court of Appeals with the definite and firm conviction that a mistake has been made. The trial court abused its discretion in placing the defendant in the juvenile system because the prosecutor proved by a preponderance of the evidence that the best interests of

REFERENCES

Am Jur 2d, Criminal Law § 527; Juvenile Courts and Delinquent and Dependent Children §§ 49, 60.

See ALR Index under Juvenile Courts and Delinquent Children; Sentence and Punishment.

the defendant and the public would be served by sentencing the defendant as an adult offender.

3. The trial court's order of probation and commitment must be reversed and the matter remanded to the trial court to sentence the defendant as an adult offender.

Reversed and remanded.

MICHAEL J. KELLY, P.J., dissenting, stated that the decision to sentence the defendant as a juvenile offender should be affirmed on the basis of the more recent expert opinions that support the original opinion of the sentencing court.

1. CRIMINAL LAW — JUVENILES — SENTENCES.

A trial court's decision whether to sentence a minor as a juvenile offender or as an adult offender is subject to a bifurcated standard of review: first, the court's factual findings supporting its determination regarding each of the statutory factors to be determined are reviewed for clear error and, second, the ultimate decision is reviewed for an abuse of discretion; the abuse-of-discretion standard requires the reviewing court to determine whether the sentence is proportionate to the seriousness of the circumstances surrounding the offense and the offender (MCL 769.1[3]; MSA 28.1072[3]; MCR 2.613[C]).

2. CRIMINAL LAW — JUVENILES — SENTENCES — APPEAL — EVIDENCE.

Posthearing reports submitted by a defendant will not be considered by the Court of Appeals in determining whether a trial court's factual findings at the defendant's juvenile sentencing hearing were clearly erroneous or whether the trial court abused its discretion in determining whether to sentence the defendant as a juvenile offender or an adult offender following the hearing.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*), for the defendant on appeal.

ON REMAND

Before: MICHAEL J. KELLY, P.J., and JANSEN and REILLY, JJ.

JANSEN, J. This case is before us on remand from the Supreme Court for reconsideration of this appeal after the Supreme Court concluded that defendant did not receive. effective assistance of appellate counsel. *People v Lyons,* 442 Mich 894 (1993). We again reverse the trial court's decision to sentence defendant as a juvenile.

Defendant[1] pleaded guilty before Detroit Recorder's Court Judge Dalton A. Roberson to first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony,[2] MCL 750.227b; MSA 28.424(2), on March 30, 1990. The offenses were committed on November 27, 1989, at the home of the victim, Douglas Thomas, in the City of Detroit. Defendant, born August 10, 1973, was sixteen years old when he committed the offenses. A juvenile sentencing hearing was held on July 11, 1990, July 12, 1990, and August 21, 1990. Following the testimony, the trial court issued a written opinion and order on November 30, 1990, and sentenced defendant as a juvenile.

The prosecutor appealed that decision to this Court, and this Court reversed the order of probation and commitment and remanded to the trial court for imposition of an adult sentence. *People v Lyons,* 195 Mich App 248; 489 NW2d 218 (1992). The Supreme Court vacated that decision and remanded to this Court for reconsideration of the appeal. The prosecutor again only appeals the trial court's decision to sentence defendant as a juvenile offender rather than as an adult offender.

The standard of review of a trial court's decision

[1] Defendant's name was changed legally during the pendency of these appeals to James Edwin Lyons, Jr.

[2] Pursuant to the Supreme Court's holding in *People v Veling,* 443 Mich 23; 504 NW2d 456 (1993), we need not vacate the felony-firearm conviction because that offense is included under the automatic waiver statute.

to sentence a minor as a juvenile or as an adult is a bifurcated one. First, the trial court's factual findings supporting its determination regarding each factor enumerated in MCL 769.1(3); MSA 28.1072(3) are reviewed under the clearly erroneous standard. MCR 2.613(C); *People v Passeno,* 195 Mich App 91, 103; 489 NW2d 152 (1992). The trial court's factual findings are clearly erroneous if, after review of the record, this Court is left with a definite and firm conviction that a mistake has been made. *Id.* Second, the ultimate decision whether to sentence the minor as a juvenile or as an adult is reviewed for an abuse of discretion. The abuse-of-discretion standard requires the reviewing court to determine whether the sentence is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Id.,* pp 103-104; *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).

Pursuant to MCL 769.1(3); MSA 28.1072(3), and MCR 6.931(A), the trial court must conduct a juvenile sentencing hearing to determine if the best interests of the juvenile and the public would be served better by placing the minor in the custody of the juvenile offender system or by sentencing the juvenile as an adult. The trial court is required to consider the following factors in making its determination:

(a) The prior record and character of the juvenile, his or her physical and mental maturity, and his or her pattern of living.

(b) The seriousness and the circumstances of the offense.

(c) Whether the offense is part of a repetitive pattern of offenses which would lead to 1 of the following determinations:

(i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for

treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to. render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security. [MCL 769.1(3)(a)-(f); MSA 28.1072(3)(a)-(f).]

See MCR 6.931(E)(3)(a)-(f).

The prosecutor has the burden of proving by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing the juvenile as an adult offender. MCR 6.931(E)(2). The trial court must make factual findings and conclusions of law in determining whether to sentence the minor as a juvenile offender or as an adult offender. MCL 769.1(5); MSA 28.1072(5); MCR 6.931(E)(4).

In reviewing the trial court's factual findings and its ultimate decision to sentence defendant as a juvenile offender, we must determine first whether we should consider posthearing reports[3] submitted by defendant. We conclude that it is not appropriate for us to consider any information concerning defendant after the juvenile sentencing hearing because we must determine whether the

---

[3] These posthearing reports, attached to defendant's appellate brief, include updated service plans from the Department of Social Services dated April 12, 1991, June 6, 1991, September 7, 1991, June 6, 1992, August 17, 1992, November 17, 1992, and February 1, 1993; a psychiatric report submitted by Daniel J. DeZura, M.D., dated September 22, 1992; a Recorder's Court psychiatric report submitted by Firoza B. Van Horn, Psy.D., dated January 21, 1993; and a letter from Department of Social Services caseworkers dated February 2, 1993.

trial court's factual findings are clearly erroneous or whether it abused its discretion in sentencing defendant as a juvenile on the basis of the evidence presented at the sentencing hearing held in July and August 1990. Accordingly, we will not consider the posthearing reports.

The trial court made the following factual findings: (1) that defendant was physically and mentally mature; (2) that the offense committed by defendant was of a serious nature; (3) that defendant's behavior was not likely to disrupt the rehabilitation of other juveniles in the treatment program; (4) that defendant's behavior was not likely to render him more dangerous to the public at age twenty-one; (5) that defendant was more likely to be rehabilitated by the services and facilities available in a maximum security juvenile program than by the services available in an adult program; (6) that the best interests of defendant and the public would be served by placing defendant on probation and committing him to a juvenile facility; and (7) that the prosecution had failed to prove by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing defendant as an adult.

After reviewing the testimony presented at the juvenile sentencing hearing, we believe that the trial court's factual findings were clearly erroneous and we are left with a definite and firm conviction that a mistake has been made. The trial court abused its discretion in placing defendant in the juvenile system because the prosecutor proved by a preponderance of the evidence that the best interests of defendant and the public would be served by sentencing defendant as an adult.

Regarding defendant's physical and mental maturity, defendant was characterized as being competent, intelligent (although generally character-

ized as having borderline intelligence), mature,
and capable of performing adequately in an aca-
demic setting. Despite his capabilities, defendant
was suspended six times from school for fighting,
he was expelled from school for carrying a knife,
and he would flaunt his beeper and money to his
schoolmates. At the age of fourteen or fifteen,
defendant rented a car to make his drug deliver-
ies. Defendant ran away from his home several
times and would live in crack houses and sell
crack cocaine. At the time of Thomas' death, de-
fendant was selling crack cocaine out of Thomas'
house.

Several of the witnesses indicated that they
found defendant was not remorseful for his actions
in killing Thomas. Further, testimony indicated
that defendant needed to command power over
others, that he had no regard for authority, that
he was manipulative, that he had a low frustra-
tion level, and that he would impulsively act out.

Regarding the seriousness of the offenses, defen-
dant shot the victim in the face five times at close
range. The trial court correctly stated that this
offense was "very grave." The offenses arose out of
the fact that the victim apparently owed defen-
dant $100 for a drug debt. As the victim sat on his
couch, defendant noticed his wallet and attempted
to take it. A struggle apparently ensued and defen-
dant shot the victim five times in the face. Defen-
dant's claim on appeal that he did not know that
the gun was an automatic, that he thought he
fired only one shot, but that the gun kept on firing,
is absurd. Defendant admitted to Dr. Van Horn
that he carried a gun for protection and that the
gun he carried was an automatic. Shooting the
gun once or five times is surely of little conse-
quence to the victim.

Regarding whether defendant is amenable to

treatment, the evidence before the trial court indicated that he was not. In June 1988, defendant was arrested and found guilty of possession of cocaine. He was placed in temporary custody of the juvenile court and placed on intensive probation. In November 1988, defendant violated the terms of his probation by being truant from his family home. Defendant was placed in the Flint Detention Center, where his adjustment was described as poor, he was disruptive, and he teased his peers. Defendant was transferred to Boysville of Michigan, where his adjustment was described as fair. Defendant left without permission following an outing at a Detroit Tigers game. In August 1989, defendant was arrested for carrying a concealed weapon and possession of cocaine. He was again placed in the Flint Detention Center, and he escaped by jumping through a dining room window with another juvenile. Defendant was on escape status when he committed the instant offenses. Following his arrest in this case, defendant was placed in the Wayne County Youth Home, and he again escaped with two other juveniles. He was then placed in the Wayne County Jail.

Such evidence indicates that defendant would be disruptive to the rehabilitation efforts of other juveniles in the treatment program. Further, Dr. Van Horn testified at the juvenile hearing that defendant would not be amenable to treatment, but, rather, would be resistant to therapy. Therefore, considering defendant's prior record, the instant offenses are part of a repetitive pattern of offenses showing that defendant is not amenable to treatment and that, despite any potential for treatment, his behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

We also believe that defendant would be dangerous to the public if released at the age of twenty-

one. Several witnesses testified regarding defendant's lack of remorse. Defendant's prior drug trafficking, his carrying of guns, his involvement in gangs, his inappropriate behavior in school, his lack of real improvement while in juvenile facilities before this offense, and his unstable family structure all indicate that he would be dangerous to the public if released at the age of twenty-one.

The evidence also showed that it is more likely that defendant could not be rehabilitated by the services and facilities available in the juvenile programs any better than by those available in adult programs. Defendant escaped from juvenile facilities three times, and his adjustments were never described as better than "fair." Defendant was described as manipulative and impulsive and as having disregard for authority figures. The testimony also indicated that defendant was not interested in receiving treatment or in being in any program that would help him change his behavior.

Accordingly, after reviewing the record, we find that the interests of the public welfare and the protection of the public security would be served best by sentencing defendant in the adult system. The trial court's decision to place defendant in the juvenile offender system constituted an abuse of discretion. We do not find the trial court's discretion to be unreasonably limited to a "Hobson's choice" in this case because defendant created his own circumstances by pleading guilty to first-degree murder rather than having a jury or bench trial and possibly being convicted of a lesser offense. In any event, in reviewing the record that was before the trial court, we are firmly convinced that the trial court's factual findings are clearly erroneous and that the trial court abused its dis-

cretion in sentencing defendant within the juvenile system.

We reverse the trial court's order of probation and commitment and remand this case to the trial court for imposition of an adult sentence. We do not retain jurisdiction.

REILLY, J., concurred.

MICHAEL J. KELLY, P.J. *(dissenting).* I respectfully dissent.

I

When this case was before us originally, I declined to find that the trial court's decision to sentence defendant as a juvenile was an abuse of discretion. A majority of the Supreme Court found defendant's appellate brief wanting,[1] and vacated our prior opinion and remanded for reconsideration, including reargument, after further briefing by the State Appellate Defender's office and the Wayne County Prosecutor. The main significance of the defendant's updated brief pertains to post-sentencing proceedings. The commitment review hearing undercuts the finding by the majority that defendant is not amenable to treatment and would be disruptive to the rehabilitation of other juveniles. The commitment review hearing was conducted on February 2, 1993, before the sentencing judge. The parties stipulated psychological and social evaluations of defendant. These are appended to appellant's supplemental brief.

Because the majority has frozen its review at

---

[1] A finding that needlessly encourages prolixity. The Court of Appeals had no difficulty recognizing the issue; dealing with it was a different-colored horse. We do not need computer-generated, magnetic card recycled law review articles regarding every conceivable twist in most cases.

the sentence hearing in July and August of 1990,[2] if I were to do likewise I would reaffirm my original dissent and incorporate it by reference. *People v Lyons,* 195 Mich App 248, 259; 489 NW2d 218 (1992), vacated 442 Mich 894 (1993).

II

In its original decision, the majority assigned considerable weight to the opinion of Dr. Firoza B. Van Horn, a clinical psychologist. See 195 Mich App 255-256. Van Horn conducted another evaluation of defendant on December 17, 1992, and reversed virtually all her original conclusions regarding the appropriate sentence for defendant. Also, a psychiatric evaluation of defendant was conducted in September of 1992 by Dr. Daniel J. DeZura, a consulting psychiatrist, whose findings agree with Van Horn's revised evaluations. It would be lamentable, and arguably unconstitutional, to ignore these more recent expert opinions that support the original decision of the sentencing judge.

The prosecutor's brief is silent with regard to the commitment review hearing of February 2, 1993, but the transcript of the hearing is part of our record. At the hearing, the assistant prosecuting attorney first requested an adjournment while the defendant's application for review was pending in the Supreme Court, and then stipulated with regard to the entry of the reports. I quote:

> *Mr. Chambers:* [*Assistant prosecutor*] Well, what —initially, what I wanted to do, Judge, is ask you to stay proceedings, here, until we get some kind of response from the Supreme Court.

---

[2] Turning a blind eye to actual lower court proceedings only guarantees another appeal. We look at it now or we look at it later.

*The Court:* Well, how do we know when we're going to get it? Don't you have to ask the Supreme Court?

*Mr. Chambers:* It's been up there a couple of months.

*The Court:* I know, that's why I'm wondering.

*Mr. Chambers:* And I don't know what the usual period is on that, but I do note in one of the latest reports I think they're talking about having Mr. Lyons complete some business course. That's going to take six weeks. And I presume that that means that he is going to be at Green Oaks Center for six weeks. So, maybe we could just adjourn it for six weeks, and maybe we'll have something from the Supreme Court by that time. Or, in the alternative, I would stipulate to all of the reports that have been written up, and ask you to follow Ferosa [sic] Van Horn's report. She indicates in her report that—her recommendation is that Mr. Lyons stay at the Green Oaks Center until he becomes of age, meaning until he becomes 21.

The reports were then stipulated by both sides, after which the proceedings were concluded. I believe the Supreme Court[3] will see the need for evaluation of those reports and, hopefully, it will do the evaluation in-house and not send the matter to this divided panel for another round.

I would affirm.

---

[3] Somebody in the institution must read these dissents. Every once in a while one is mentioned.