PEOPLE v PERRY

Docket No. 143422. Submitted November 9, 1995, at Grand Rapids. Decided August 30, 1996, at 9:00 A.M.

Michael L. Perry was convicted by a jury in the Saginaw Circuit Court, Leopold P. Borrello, J., of three counts of first-degree murder and three counts of attempted murder. The defendant, a juvenile, was accused of having thrown two Molotov cocktails into a house during the nighttime, causing a fire in which three of the six occupants died and three escaped. In addition to testimony of witnesses that placed the defendant outside the burned house near the time of the fire and testimony concerning admissions by the defendant that he had thrown at least one of the firebombs, Jason Ricco, who had been tried as a juvenile and had been acquitted of murder but convicted of arson, testified that both he and the defendant had gone out with the firebombs with the intent of causing trouble and had gotten rid of evidence after the fire, but that it was the defendant who had thrown the firebombs, despite his attempt to dissuade the defendant from doing so. The trial court prefaced the accomplice testimony instruction of CJI2d 5.6 with the disputed accomplice instruction of CJI2d 5.5 rather than the undisputed accomplice instruction of CJI2d 5.4. The court refused to instruct the jury concerning accessory after the fact, holding that accessory after the fact is not a cognate lesser included offense of murder. Following the convictions, the court determined that the defendant should be sentenced as an adult and imposed mandatory life sentences for each of the murder convictions and sentences of ten to twenty years for each of the convictions of attempted murder. The defendant appealed.

The Court of Appeals held:

1. The trial court did not abuse its discretion in failing to instruct the jury pursuant to CJI2d 5.4 that Jason Ricco was an undisputed accomplice. Because Ricco never admitted participating in or encouraging the murders and attempted murders of which the defendant was convicted, and, indeed, was found not guilty of those charges and guilty of only arson after a trial in a juvenile court, there was a factual dispute concerning whether Ricco took part in the crimes of which the defendant was charged, and, accordingly, the trial court did not abuse its discretion in giving the

disputed accomplice instruction rather than the undisputed accomplice instruction. In any event, because the trial was not essentially a credibility contest between the defendant and Ricco, the defendant's failure to preserve this issue by an appropriate objection in the trial court precludes appellate review absent a showing that a failure to review would result in a miscarriage of justice. A miscarriage of justice has not been shown.

2. The trial court did not err in refusing to instruct the jury with respect to accessory after the fact on the basis that accessory after the fact is not a cognate lesser included offense of the charged offenses of murder and attempted murder. The societal interests that are sought to be protected by making murder a crime are not the same as those sought to be protected by making accessory after the fact a crime. The punishment of murder is intended to deter the taking of human life and thereby protect the societal interests in the benefits of the continued existence of the victim; the punishment of one who is an accessory after the fact is to deter behavior that interferes with society's efforts to bring a perpetrator to justice. Because making accessory after the fact a crime serves a different societal interest than making murder a crime, the offense of accessory after the fact is not a cognate lesser included offense of murder, and the trial court properly refused to instruct with respect to that offense. In any event, even if such an instruction should have been given, the failure to give the instruction would have been harmless error, because the jury's rendering of its verdict of guilty of the charged offenses rather than of the lesser included offenses on which the jury was instructed indicates a lack of likelihood that the jury would have convicted of accessory after the fact.

3. Because the expert testimony concerning the purpose of a Molotov cocktail was evidence that could have been contradicted by witnesses other than the defendant, the prosecutor's statements during closing and rebuttal arguments that the expert testimony was uncontradicted did not constitute a comment regarding the defendant's failure to testify.

4. The record does not support the assertion that the trial court, in determining whether to sentence the defendant as an adult or as a juvenile, placed disproportionate weight on the seriousness and circumstances of the crime and failed to give proper consideration of the other statutory factors in concluding that it was in the best interests of the defendant and the public to sentence the defendant as an adult.

Affirmed.

O'CONNELL, P.J., concurring, wrote separately to emphasize that an accessory after the fact is punished because he obstructs the path of justice, rendering societal retribution less assured, and that an accessory after the fact is not punished in a misguided effort to deter the perpetrator of the underlying crime from committing that crime.

BANDSTRA, J., concurring in part and dissenting in part, stated that the convictions should be reversed and the matter should be remanded for a new trial because the trial court erred in refusing to instruct the jury with respect to accessory after the fact and that error cannot be said to be harmless. Because the theory of the defense was that the defendant, at most, was involved in the destruction and secreting of evidence after the arson took place and there was evidence supporting that theory, the trial court should have instructed with respect to accessory after the fact. Further, the failure to so instruct cannot be said to be harmless error on the basis of the jury's convictions of the charged crimes rather than any of the lesser included offenses of which the jury was instructed, because the failure to convict of those included offenses does not necessarily indicate that the jury would not convict of accessory after the fact.

1. CRIMINAL LAW — WITNESSES — ACCOMPLICES — JURY INSTRUCTIONS.

The presumption of innocence is not, by itself, sufficient to create a closely drawn credibility contest between a defendant and an accomplice such as will require a trial court to give sua sponte the standard jury instruction concerning the use of accomplice testimony (CJI2d 5.6).

2. HOMICIDE — MURDER — COGNATE INCLUDED OFFENSES — ACCESSORY AFTER THE FACT.

Accessory after the fact is not a cognate lesser included offense of murder.

3. CRIMINAL LAW — EVIDENCE — UNCONTRADICTED EVIDENCE — PROSECUTING ATTORNEYS.

The assertion by a prosecuting attorney that expert testimony is uncontradicted does not constitute an improper comment concerning the fact that a criminal defendant did not testify where the expert testimony could be contradicted by witnesses other than the defendant.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prose-

cuting Attorney and *J. Thomas Horiszny*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*), for the defendant on appeal.

Before: O'CONNELL, P.J., and BANDSTRA and J. M. BATZER,* JJ.

J. M. BATZER, J. On February 21, 1991, defendant was convicted by a jury in the Saginaw Circuit Court, Judge Leopold P. Borrello presiding, of three counts of first-degree murder, MCL 750.316; MSA 28.548 (with the underlying felony being arson, MCL 750.72; MSA 28.267), and three counts of attempted murder, MCL 750.91; MSA 28.286. On June 27, 1991, the circuit court ruled that defendant would be sentenced as an adult. Defendant received life sentences for the murder convictions and sentences of ten to twenty years for the attempted murder convictions. Defendant appeals as of right, and we now affirm.

In June of 1990, thirteen-year-old Jacinto (Jason) Ricco lived in Saginaw, Michigan, with his mother and two sisters, Yolanda and Miriam Amanda Ricco. For a number of years, tense relations had existed between Jason Ricco and the Rollie family, who lived a few houses away from the Ricco's on a different street in the same neighborhood, though Jason's sisters socialized, played, and were friends with the Rollie children. In August of 1989, Jason threatened to kill some members of the Rollie household. On the same occasion, Jason Ricco stood outside the Rollie house and yelled threats involving a firebomb.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

During the evening of June 13, 1990, adolescent friends and acquaintances of Jason Ricco, including defendant, gathered at the Ricco home and engaged in various recreational activities, including underage drinking. These young people were left overnight, unsupervised by any adult. Between 4:00 A.M. and 5:00 A.M. on June 14, defendant and Jason Ricco left the house together, after having stated they were going out to "cause trouble." When they ran back into the house a few minutes later, they stated that they had set the Rollie house on fire by throwing a firebomb, which Jason had lit and defendant had held and thrown. Jason Ricco explained that they had thrown the firebomb because of "a feud." Defendant and Jason argued about whether the matches dropped by Jason near the Rollie house should be retrieved and blamed each other for setting the fire. There was testimony that defendant had said he threw the firebomb because Jason told him to throw it and that Jason said he did not think the defendant would actually do it.

The Rollie house was ablaze. Yolanda Ricco had seen the blaze from her bedroom window and heard the screams of her friends, the Rollie children. Yolanda Ricco was very upset about the fire, but "someone," possibly the defendant, prevented her from calling the fire department or leaving the house. After a friend refused to dispose of a gasoline can for them, defendant and Ricco talked in the bathroom about disposing of evidence, and the toilet was flushed several times. Traces of the type of fuel that had started the Rollie house fire were later found in the toilet.

Both Rollie parents and one child escaped from their burning home, but the other three Rollie children were unable to make their way out. They perished in the fire because of smoke inhalation. The house burned to the ground.

Jason Ricco testified that at some time after 4:00 A.M. on June 14, 1990, he and defendant discussed "causing some trouble or something." According to Ricco, the two youths went together to the Ricco garage and retrieved two Molotov cocktail firebombs, with the intention of throwing them somewhere, such as into a yard. Defendant carried both bombs toward the Rollie home and stated that he wanted to light them because of a feud between himself and a neighbor of the Rollies. Jason Ricco was carrying matches, and defendant had a towel so that he "wouldn't get his fingerprints on the bottles." When they reached the Rollie home, defendant set the firebombs down. Jason Ricco lit one of them, defendant said he was going to throw it into the Rollie home, and Ricco told him not to. Ricco turned, ran toward his home, and heard two "whooshes" when the Molotov cocktails ignited, but did not see the bombs being thrown into the Rollie house by the defendant.

Inspector Joseph Dziuban, an arson investigator for the Saginaw Fire Department working with the Saginaw Police, opined on the basis of burn patterns, traces of accelerants, and the location of glass fragments from the bottles found at the scene that two firebombs had been thrown through two different living room windows, causing the conflagration.

Jason Ricco was tried in juvenile court and was acquitted of murder, but was found guilty of arson.

I

Defendant first argues that the trial court erred in failing to give the proper instruction concerning the testimony of an undisputed accomplice. Defendant contends that the jury was thereby grossly misled with respect to an issue crucial to its deliberations. Defendant contends that the issue of defendant's guilt was closely drawn, because defendant and Jason Ricco were the only two people who knew what happened with the two firebombs immediately before they were thrown into the Rollie house. The jury had to decide whether the defendant's presumption of innocence had been overcome by the testimony of the accomplice. Defendant, however, failed to raise or preserve at trial this jury instruction issue concerning the evaluation of accomplice testimony.

The determination whether a jury instruction is accurate and applicable in view of all the factors present in a particular case lies within the sound discretion of the trial court. *Williams v Coleman*, 194 Mich App 606, 623; 488 NW2d 464 (1992). This Court reads jury instructions in their entirety to determine whether error requiring reversal of the conviction occurred. Instructions that are somewhat imperfect are acceptable, as long as they fairly present to the jury the issues to be tried and sufficiently protect the rights of the defendant. *People v Gaydosh*, 203 Mich App 235, 237; 512 NW2d 65 (1994).

In our opinion, the trial court did not abuse its discretion in failing to instruct the jury pursuant to CJI2d 5.4 that Jason Ricco was an undisputed accomplice.

Rather, the trial court pursuant to CJI2d 5.5 gave the jury the following instructions concerning a disputed accomplice:

> Before you may consider what Jacinto [Jason] Ricco said in court, you must decide whether he took part in the crime the defendant is charged with committing. Jacinto Ricco has not admitted taking part in the crime, but there is evidence to lead you to think that he did. A person who knowingly and willingly accepts or cooperates with someone else in committing the crime is called an accomplice.
>
> When you think about Jacinto Ricco's testimony, first decide if he was an accomplice. If, after thinking about all the evidence, you decide that he did not take part in this crime, judge his testimony as you judge that of any other witness. But if you decide that Jacinto Ricco was an accomplice, then you must consider his testimony in the following way:

The court then gave the standard instruction concerning accomplice testimony, CJI2d 5.6, with which the defendant does not take issue. The prosecutor later placed on the record an unsuccessful objection to these instructions, arguing that because Ricco had not admitted participating in the crime with which the defendant was charged, an instruction to use extra caution in considering his testimony was inappropriate. Defendant now claims that giving the jury the option to find that Ricco was not an accomplice, and thus to disregard the cautionary instruction regarding accomplice testimony, was an error requiring reversal of the convictions.

In *People v Jensen*, 162 Mich App 171; 412 NW2d 681 (1987), the defendant purchased an automobile from David Bart. In applying to the Secretary of State for a transfer of the automobile's title, the defendant presented a title certificate that falsely stated that no

liens with respect to the vehicle were outstanding. Before the defendant's trial for making a false application for an automobile title, Bart was charged with forging a title and knowingly possessing a forged title. Bart was offered an opportunity to plead to the misdemeanor of possession of an altered title in exchange for his testimony at the defendant's trial. At trial, Bart testified that the false statement was not on the title certificate when he transferred it to the defendant. The defendant testified to the contrary that when he received the title from Bart, it had indicated that the lien had been discharged. In *Jensen,* as in the instant case, the court gave the standard criminal jury instructions concerning the testimony of a disputed accomplice. The defendant made no objection. This Court reversed the defendant's conviction, reasoning as follows:

> The trial court erred in instructing the jurors that they were to make a factual determination of whether Bart was an accomplice. Bart admitted on direct examination that he was originally charged with forging a certificate of title and knowingly possessing a forged title. He also testified that he pled guilty to possession of a false or altered title in exchange for his testimony against defendant, but had not yet been sentenced. Through Bart's own admissions and his guilty plea to a reduced charge arising from the incident, his status as an accomplice was beyond dispute. . . . Proper instruction was especially necessary in the instant case, since Bart testified that the title was falsified only after he gave it to the defendant. Bart's guilty plea to possession of a false title, in addition to undermining his credibility, directly contradicted his trial testimony. [*Jensen, supra,* p 187.]

In the instant case, Jason Ricco never admitted participating in or encouraging the murders and attempted murders of the Rollies. It appears that at

his own trial, Ricco was convicted of arson only. Because there was a factual dispute concerning whether Ricco took part in the crimes that defendant was charged with committing, i.e., murder and attempted murder, the trial court did not abuse its discretion in instructing the jury as it did.

Defendant's failure to preserve this issue at trial bars a finding by this Court of error requiring reversal of the conviction. In *Jensen*, the relief sought by the defendant was not barred by his failure to object to the trial court's jury instructions, because "the factual issues were 'closely drawn.' " *Id.*, pp 188-189. Where "the issue is closely drawn," reversal of a conviction may be required where a trial court fails to give a cautionary instruction concerning accomplice testimony, even in the absence of a request to charge. *People v McCoy*, 392 Mich 231, 240; 220 NW2d 456 (1974). The issue of a defendant's guilt "is 'closely drawn' if the trial is essentially a credibility contest between the defendant and the accomplice." *Jensen, supra*, p 188.

No authority cited by defendant has found the existence of a credibility contest where, as here, the defendant relied exclusively on the presumption of innocence to dispute an accomplice's testimony. *McCoy, supra*, p 238; *Jensen, supra*, pp 188-189; *People v Smith*, 158 Mich App 220, 223-224; 405 NW2d 156 (1987); *People v Fredericks*, 125 Mich App 114, 116; 335 NW2d 919 (1983); *People v Jackson*, 97 Mich App 660, 662-666; 296 NW2d 135 (1980). Even accepting the premise that defendant's reliance on his presumption of innocence was inconsistent with Jason Ricco's testimony, it does not follow that defendant's trial was essentially no more than a credi-

bility contest. Trial witnesses other than Jason Ricco clearly testified that defendant was outside the Ricco home when the Rollie fire was set and that defendant admitted throwing at least one firebomb into the Rollie house. In fact, Ricco's testimony added little to the evidence that defendant committed murder and attempted murder. Because a reasonable factfinder could have concluded, even absent Ricco's testimony, that defendant's participation in the firebombing of the Rollie home had been proved beyond a reasonable doubt, defendant's trial was not a credibility contest between Ricco and defendant.

Because the factual issue in the instant case was not closely drawn within the meaning of *Jensen, supra,* defendant has not established that manifest injustice would result from this Court's failure to review this unpreserved issue. Failure to object to jury instructions in the trial court waives error for purposes of appeal unless relief is necessary to avoid manifest injustice. MCL 768.29; MSA 28.1052; *People v Van Dorsten,* 441 Mich 540, 544-545; 494 NW2d 737 (1993). A miscarriage of justice occurs when an erroneous or omitted instruction pertains to a basic and controlling issue in the case. *People v Chatfield,* 170 Mich App 831, 835; 428 NW2d 788 (1988). Defendant has demonstrated no entitlement to review of this unpreserved issue.

II

Defendant next argues that jurors could have believed that defendant participated in the suppression of evidence following the Rollie murders and attempted murders without his having taken part in those crimes. If properly instructed, defendant con-

tends, the jury could have convicted defendant as an
accessory after the fact only. Defendant asserts that
because the trial court did not give a requested
instruction regarding a cognate lesser offense that is
supported by the trial record, i.e., accessory after the
fact (which is a common-law offense that may be
prosecuted under MCL 750.505; MSA 28.773), reversal
is required. Defendant cites *People v Usher*, 196 Mich
App 228, 232; 492 NW2d 786 (1992), for the proposi-
tion that accessory after the fact is a cognate lesser
offense of murder.

After the jury was instructed, defense counsel
noted for the record that he had requested an instruc-
tion concerning accessory after the fact, claiming it to
be a cognate lesser offense of murder. Defense coun-
sel argued:

> [In light of the evidence, the jury could] have a reasona-
> ble doubt about whether or not the defendant participated
> in the burning of the house, but could find that he took cer-
> tain actions back at the Ricco house by moving the gas can
> and participating in the disposal of flammable liquid in the
> toilet, knowing that the fire had been set, and therefore, be
> an accessory after the fact as a lesser offense.

The trial court and defense counsel engaged in the
following colloquy concerning why the requested
instruction had not been given:

> *The Court*: One, I do not believe that it is a cognate lesser
> included offense to the charge. But further, in *People v
> Karst*, 118 Mich App 34 [324 NW2d 526 (1982)] at page 41,
> an indication is that—that in order to instruct and to give
> accessory after the fact as a lesser charge, it says such must
> be charged in a separate count, and was not in this case.
> And cites *People Bargy*, 71 Mich App 609 [298 NW2d 626
> (1976)].

The court believes that since the prosecutor did not charge him with being an accessory after the fact, the Court has given the instructions as an aider and abettor. And if the jury finds him guilty of that, there is — obviously, they didn't find him to be an accessory after the fact. And I don't believe it's a lesser included offense, and the Court did refuse to give the charge.

*Mr. Thomas*: It's my understanding, then, your Honor, that the Court feels that the accessory after the fact requested instruction is not a proper cognate offense, number one; number two, it is not a lesser included offense?

*The Court*: Right.

The trial court was correct when it held that accessory after the fact is not a cognate lesser offense of murder, *Usher* notwithstanding.[1]

In its comprehensive discussion of lesser offenses in *People v Hendricks*, 446 Mich 435, 447; 521 NW2d 546 (1994), our Supreme Court states:

To preserve the jury's proper function, the bounds of possible offenses the jury may consider in a particular case must be described. In the case of cognate lesser offenses, the method of management adopted by this Court is to limit instruction to those offenses that bear a sufficient relation-

---

[1] The trial court's reliance on *Karst, supra*, p 41, in support of its ruling was misplaced. This Court's ruling in *Karst* was that a *defendant's* rights were violated when evidence supporting an accessory after the fact conviction was used as a basis for a finding of guilt as an aider and abettor. *Karst, supra*, pp 38-41. As an incidental point, this Court stated that the offense of accessory after the fact "must be charged in a separate count and was not in this case." *Id.*, p 41. The latter rule is intended to ensure that criminal defendants have notice of the charges against them. *Usher, supra*, pp 231-232, 234; *Bargy, supra*, pp 616-617; *Government of the Virgin Islands v Aquino*, 378 F2d 540, 554 (CA 3, 1967). Where a defendant requests that the jury be instructed with respect to a lesser included offense, issues of notice and jurisdiction are waived. *Usher, supra*, p 234; *People v McKinley*, 168 Mich App 496, 506-508; 425 NW2d 460 (1988). In the instant case, defendant waived the protection provided by the *Karst* rule, and the rule was thus inapplicable.

ship to the principal charge in that they are in the same class or category, *protect the same societal interests as that offense,* and are supported by the evidence adduced at trial. Thus, not all lesser offenses that are not necessarily included are potential candidates for consideration as cognate crimes. [Emphasis added.]

As tested by *Hendricks,* we hold that accessory after the fact is not a cognate lesser offense of murder, because the societal interests that are protected by making murder and accessory after the fact criminal offenses are entirely different.

The societal interests in making murder a crime and subjecting a murderer to drastic punishment are to deter the killing of human beings by other human beings, with all the great loss and upheaval that results, and to punish severely those who murder, in an effort to render justice. Murder not only unnaturally takes the life of a human being, but also concomitantly engenders great emotional pain and leaves a great emotional burden and sense of loss carried by the family and loved ones of the victim. Additionally, very often there is a loss to society of the future productive potential of the victim, both economically and also as a contributor to family and community in all of the many and immeasurable ways that people enrich and contribute to the lives and welfare of other people. Moreover, the law makes murder the very gravest offense, because, without such laws, experience teaches that the act of murder provokes retaliation from the victim's immediate family, extended kinship groups, and friends. Retaliation in turn provokes further retaliation and further alignment of society's members. By drastically punishing

murder, the law dispenses society's justice and short-circuits private vengeance, feuds, and warfare.

The purpose of making accessory after the fact a crime is entirely different. Those who are only accessories after the fact by definition did not participate in the killing or other principal offense and did nothing in furtherance of it before or while it occurred. An accessory after the fact is a person who with knowledge of another's guilt gives assistance to that felon in an effort to hinder the felon's detection, arrest, trial, or punishment. *People v Lucas*, 402 Mich 302; 262 NW2d 662 (1978); *People v Williams*, 117 Mich App 505; 324 NW2d 70 (1982). An accessory after the fact aids a perpetrator in the concealment of evidence of the crime or in the flight or concealment of the perpetrator. The purpose of making accessory after the fact a criminal offense is not primarily to deter the commission of the principal offense. Rather, the gravamen of accessory after the fact is that it is an interference with society's effort to bring a perpetrator to justice. By punishing those who are accessories after the fact, the law serves to deter others from hindering the justice process after the fact of the principal crime. Thus, the purpose of making accessory after the fact a crime is to assist society in apprehending those who have committed crimes and to assist in preserving evidence of crimes so that perpetrators of crimes can be brought to society's justice. Such a purpose, while very important and worthwhile to the welfare of society, is not at all the same deter-

rence-punishment purpose served by making murder a crime.[2]

We believe that any language in *Usher* that accessory after the fact is a cognate lesser offense of murder is dicta. In *Usher*, the defendant sought an instruction with respect to accessory after the fact before the trial court ruled on his motion for a directed verdict with respect to murder. Then, after having prevailed with respect to his motion for a directed verdict, and in the course of the trial on the charge of being an accessory after the fact to murder, the defendant *pleaded guilty* to being an accessory after the fact. Thus, *Usher* represents nothing more than an application of the well-established doctrine that a properly tendered and accepted unconditional guilty plea operates as a waiver of irregularities in the prior proceedings, absent a jurisdictional or similar defect. See *People v Crall*, 444 Mich 463; 510 NW2d 182 (1993); *People v New*, 427 Mich 482; 398 NW2d 358 (1986); *People v Johnson*, 396 Mich 424; 240 NW2d 729 (1976). Were accessory after the fact to be considered a cognate lesser offense of murder, the prosecutor correctly points out that in every case in which murder is charged and there is any evidence that the defendant assisted in the destruction of evidence or evasion of detection an instruction on accessory after the fact would be required. We believe that

---

[2] We note that our holding that accessory after the fact is not a cognate lesser offense of murder when analyzed in accordance with the rule stated in *Hendricks* in that the two offenses are directed at very different societal interests reaches the issue that our Supreme Court declined to review by its order denying leave to appeal in *People v Rodgers*, 451 Mich 894 (1996). We further note that Justice BOYLE, in her comments in that same order concerning why she would grant leave in *Rodgers*, appears to apply *Hendricks* in a like analysis and intimates at a conclusion similar to ours.

not only would such a rule be unwise policy, but also that such an instruction is not required because the offense of being an accessory after the fact is not a lesser cognate offense of murder, as tested by *Hendricks*.[3]

Even assuming arguendo that accessory after the fact can be a cognate lesser offense of murder and that defendant was entitled to an instruction regarding accessory after the fact, under the rule of *People v Beach*, 429 Mich 450; 418 NW2d 861 (1988), the trial court's failure to give such an instruction here was harmless error. If the jury had doubts about defendant's guilt of the charged offenses, first-degree felony murder, it could have found him guilty of the lesser included offenses of second-degree murder or involuntary manslaughter, with regard to which it had been instructed. Because the jury did not do so, we can conclude that it had no reasonable doubt concerning defendant's guilt of first-degree felony murder.[4] Here, as in *Beach*, "the intermediate charge[s]

---

[3] For the reasons stated in our analysis of the question of the societal interests element, we hold that accessory after the fact is not in the same "class or category" as murder. See *Hendricks, supra*, p 447. See also *People v Bailey*, 451 Mich 657; 549 NW2d 325 (1996). The only similarities between murder and accessory after the fact to murder is that there must have been a killing of a human being. To be guilty of murder, the defendant must have been a participant in the killing either as the actual killer or as an aider or abettor. See, e.g., *People v Feldmann*, 181 Mich App 523, 535-536; 449 NW2d 692 (1989). To be guilty of being an accessory after the fact, the defendant, by definition, was *not a participant in the killing*, either as the actual killer or as an aider or abettor. Thus, to be guilty of murder one has to have had a causal role in the killing. In contrast, an accessory after the fact has no causal role in the killing. Accordingly, accessory after the fact is not in the same "class or category" of offense as murder.

[4] We also note that when the jury was instructed with respect to aiding and abetting, it was correctly charged by the trial court: "Even if the defendant knew that alleged crime was planned or was being committed,

rejected by the jury . . . necessarily . . . indicate[s] a
lack of likelihood that the jury would have adopted
the lesser requested charge." Here, where the defend-
ant rested on the presumption of innocence, there
was, as in *Beach*, only "an inference built on a possi-
bility that the jury might disbelieve part of [the prose-
cution's witnesses'] testimony" relating to defendant's
participation in the firebombing of the Rollie home
with the resultant deaths and yet it might believe the
testimony elicited by the prosecution concerning the
destruction of evidence and thereby conclude that
defendant was guilty only of being an accessory after
the fact. Here, as in *Beach*, such an inference built
upon such a possibility is not sufficient to require
reversal of the convictions because of the failure to
give the requested instruction. *Id.*, p 491.

III

Defendant next asserts that the trial court erred in
denying a mistrial after the prosecutor, during the
course of closing and rebuttal arguments, called the
jury's attention to defendant's silence by referring to
prosecution testimony as being undisputed. The
defendant raised and preserved this issue by his trial
counsel's motion below for a mistrial, which the trial
court denied.

During closing and rebuttal arguments, the prosecu-
tor noted that Inspector Dziuban's expert testimony
regarding the purpose of a Molotov cocktail was
uncontradicted. Defendant moved for a mistrial
"based upon the repeated references by the prosecu-

---

the mere fact that he was present when it was committed is not enough to
prove that he assisted in committing it."

tor to my client's failure to testify." The prosecutor responded:

> [I]n each reference where we talked about uncontra-
> dicted evidence, we were talking about specific evidence,
> Mr. Dziuban's expert testimony in this particular case. And
> there can be—they could have called testimony to be con-
> tradict [sic] that . . . I was, in particular very careful to limit
> any use of the word uncontradicted to specific testimony
> that, in fact the defense could've called if they'd have
> wanted to other than the defendant . . . .

A prosecutor may not comment upon a defendant's failure to testify. MCL 600.2159; MSA 27A.2159; *People v Davis*, 199 Mich App 502, 517; 503 NW2d 457 (1993); *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991). However, a prosecutor's statement that certain inculpatory evidence is undisputed does not constitute a comment regarding the defendant's failure to testify, particularly where someone other than the defendant could have provided contrary tes-timony.[5] *People v Parker*, 307 Mich 372, 376; 11 NW2d 924 (1943); *People v Hammond*, 132 Mich 422, 429; 93 NW 1084 (1903); *People v Martin*, 44 Mich App 254, 257; 205 NW2d 96 (1972); *People v Alexander*, 17 Mich App 497, 499-500; 169 NW2d 652 (1969); *People v Hider*, 12 Mich App 526, 529-530; 163 NW2d 273 (1968). See also *United States v El-Zoubi*, 993 F2d 442, 447 (CA 5, 1993); *Raper v Mintzes*, 706 F2d 161, 164-165 (CA 6, 1983).

---

[5] Some authorities indicate that such comment is acceptable even if the defendant was the only person who could provide contrary testimony. *People v Earl*, 299 Mich 579, 582-583; 300 NW 890 (1941); *People v Jacoboni*, 34 Mich App 84, 86; 190 NW2d 720 (1971). Other authorities indicate the contrary. *People v Payne*, 131 Mich 474, 480; 91 NW 739 (1902); *People v Centers*, 141 Mich App 364, 378; 367 NW2d 397 (1985), vacated in part on unrelated grounds 422 Mich 951 (1985).

Reversal of a conviction because of a prosecutor's comments referring to uncontradicted prosecution testimony may be required under certain circumstances, because the rule against such comments "is an important corollary to the Fifth Amendment privilege against self-incrimination." *Guenther, supra,* p 177.

Upon review of the record, we are satisfied that the prosecutor's assertion that he limited his comments regarding unrelated testimony to specific instances that were subject to contradiction by witnesses other than defendant is correct. We find no impropriety in the prosecutor's comments.

IV

Defendant, born October 4, 1973, was sixteen years old when the Rollie murders and attempted murders were committed in June of 1990 and seventeen years old when the court sentenced him on June 27, 1991. He argues that the primary inquiry at a sentencing disposition hearing is whether a juvenile is amenable to treatment as a juvenile. Because the circuit court recognized that defendant was clearly amenable to treatment, defendant contends it abused its discretion in sentencing him as an adult. Defendant asserts that the sentencing court erroneously gave disproportionate weight to the single factor of the seriousness of the crimes. Defendant argues that because he had no prior record and his absenteeism from school was not egregious behavior, his prior record and character, physical and mental maturity, and pattern of living favored sentencing as a juvenile. If the Legislature had intended that all murderers be sentenced as

adults, it would not have provided trial courts with discretion to sentence murderers as juveniles.

A trial court's findings of fact at a juvenile sentencing hearing are reviewed for clear error, while the ultimate decision whether to sentence a minor as a juvenile or as an adult is reviewed for an abuse of discretion, using the principle of proportionality. *People v Brown*, 205 Mich App 503, 504-505; 517 NW2d 806 (1994); *People v Lyons (On Remand)*, 203 Mich App 465, 468; 513 NW2d 170 (1994); *People v Passeno*, 195 Mich App 91, 104-105; 489 NW2d 152 (1992).

Defendant has demonstrated no abuse of discretion in the trial court's decision to sentence him as an adult. Numerous experts testified at the April 30 and June 20, 1991, hearings concerning the determination whether the defendant should be sentenced as an adult. Department of Social Services delinquency services worker Martha Stimson and clinical psychologist Carol Holden advised that defendant should be sentenced as an adult, largely because of the limited time available to rehabilitate him within the juvenile system. Psychologist Laura Morris advised that defendant should be sentenced as a juvenile, but opined that defendant should be "re-evaluated" for possible "further follow up" following his twenty-first birthday. Social worker Rhoda Ann Lindeman advised that defendant be sentenced as a juvenile, but admitted that her conclusion might have been influenced by her belief that defendant was not guilty of the crimes of which he was convicted. Evidence tended to suggest that defendant was "more of a follower than a leader" and that, except for the heinousness of the crimes at issue, defendant's profile was "not that bad" and supported sentencing as a juvenile.

The trial court expressed discomfort with the sentencing options available to it, but ultimately ruled that defendant should be sentenced as an adult and imposed a mandatory sentence of life imprisonment without possibility of parole for each of the murder convictions and a sentence of ten to twenty years for each of the attempted murder convictions. The circuit court issued a "strong recommendation . . . to the future governors of this state that [defendant] be given serious consideration for a reprieve, commutation, or pardon after serving twenty years in prison."

After making findings relating to the other statutory criteria, the court indicated that what it judged to be in "the best interests of the public welfare and the protection of the public security . . . in effect decide[d] the manner in which the defendant should be sentenced, i.e., as a juvenile or as an adult."

MCL 769.1(3); MSA 28.1072(3) provides:

> A judge of a court having jurisdiction over a juvenile shall conduct a hearing at the juvenile's sentencing to determine if the best interests of the juvenile and the public would be served by placing the juvenile on probation and committing the juvenile to a state institution or agency . . . or by imposing any other sentence provided by law for an adult offender. The rules of evidence do not apply to a hearing under this subjection. In making this determination, the judge shall consider the following criteria giving each weight as appropriate to the circumstances:
>
> (a) The prior record and character of the juvenile, his or her physical and mental maturity, and his or her pattern of living.
>
> (b) The seriousness and the circumstances of the offense.
>
> (c) Whether the offense is part of a repetitive pattern of offenses which would lead to 1 of the following determinations:
>
> (i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of the other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security.

Language that is essentially identical to the above statute is set forth in MCR 6.931(E)(3).

A prosecutor has the burden of establishing by a preponderance of the evidence that the best interests of the juvenile and the public would be served by imposition of a sentence as though the defendant were an adult offender. MCR 6.931(E)(2); *Brown,* *supra,* p 506; *Lyons, supra,* p 469. A sentencing court must make specific and detailed findings of fact in relation to each of the statutory factors. MCL 769.1(5); MSA 28.1072(5); MCR 6.931(E)(4); *People v Hazzard,* 206 Mich App 658; 522 NW2d 910 (1994); *Lyons, supra,* p 469.

In order to exercise its discretion at a juvenile sentencing hearing properly, a court must attempt to weigh the relevant factors in a meaningful way at the sentencing hearing. *Hazzard, supra,* p 661. No single statutory criterion, such as the seriousness of the offense, may be given preeminence over the others. *Brown, supra,* p 504; *People v Spearman,* 195 Mich App 434, 448; 491 NW2d 606 (1992), rev'd in part on unrelated grounds sub nom *People v Rush,* 443 Mich

870 (1993), overruled in part on unrelated grounds *People v Veling*, 443 Mich 23, 43; 504 NW2d 456 (1993). The prosecution must do more than demonstrate that the defendant is guilty of a serious offense for which adult punishment is permitted. *People v Miller*, 199 Mich App 609, 619; 503 NW2d 89 (1993) (partial dissent by MURPHY, J.). A court's mere statement that the offense of which a defendant was convicted was "one of 'ultimate gravity' begs the question whether the circumstances surrounding the offense should be given more weight in deciding to sentence a defendant as an adult." *People v Haynes*, 199 Mich App 593, 598; 502 NW2d 758 (1993).

Although defendant argues that the trial court abused its discretion in basing its entire decision to sentence defendant as an adult on the fact that he had been convicted of a serious crime, the record suggests that the circuit court weighed the seriousness and the senselessness of the Rollie murders against a relatively unremarkable personal background lacking dramatic evidence of redeeming virtues and simply concluded that the latter did not outweigh the former. The sentencing court followed the explicit dictates of MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(E)(3) in giving the seriousness and circumstances of the offense factor "weight as appropriate to the circumstances." Defendant has not demonstrated that the court placed more weight on the factor than was appropriate.

We find the following reasoning of this Court in *People v Black*, 203 Mich App 428, 430-431; 513 NW2d 152 (1994), instructive and applicable to the present case:

In this case and in many others like it, our statutes create a serious quandary for the trial court. For older juveniles guilty of crimes that carry mandatory life sentences without any possibility of parole, trial courts are caught between . . . underpunishing the most serious juvenile crimes or sentencing teenagers to live out their lives in prison. It is not surprising that perplexed judges faced with the dilemma sometimes choose poorly. . . .

In this case, the trial court had before it a seventeen-year-old girl who had been found guilty of aiding and abetting a premeditated murder. If the trial court determined she should be sentenced as an adult, it would have no ability to fashion a sentence that took into account the part she played in the crime and the role her youth played in her decision to participate. On the other hand, if the trial court determined defendant should be sentenced as a juvenile, it would not be able to impose an appropriate sentence for participating in such a serious crime.

The testimony at the sentencing hearing showed that defendant had a real chance at being rehabilitated. The testimony also showed that she would not be subject to the juvenile justice system for a period sufficient to accomplish the rehabilitation. This left the trial court with two bad alternatives: sentencing defendant as a juvenile and thereby endanger society, or sentence defendant as an adult and condemn a potentially salvageable child to spend the rest of her life in prison. Under the circumstances, we cannot say that the trial court erred in making the choice [to sentence the defendant as an adult].

Similarly, in *Spearman, supra*, pp 447-448, this Court observed:

The [trial] court analyzed each statutory factor and found that [the defendant] had no prior record, that he was physically but not mentally mature, and that there was nothing "terribly negative" in his pattern of living. The court found that the offense committed and the circumstances surrounding it were very serious and militated toward treating [the defendant] as an adult. The court further found that,

although [the defendant] was amenable to treatment in a
juvenile setting and would not be disruptive, the period of
incarceration available if he were treated as a juvenile
would be "inadequate to be an appropriate sentence" and
that the best interests of [the defendant] and the public
would therefore be served by sentencing him as an adult.

This Court found, contrary to an argument
advanced by the defendant, that the trial court had
not placed preemptive weight on the seriousness of
the defendant's crime:

At the dispositional hearing, the trial court indicated that,
after considering all the evidence, it was convinced that the
best interests of both the public and [the defendant] war-
ranted sentencing him as an adult. At sentencing, the trial
court further indicated that it felt that a significant sentence
was necessary to deter [the defendant] from being involved
in any crimes like this in the future. It is therefore clear to
us that the trial court considered factors other than the
seriousness of the offense. [*Id., pp* 448-449.]

In the present case, the trial court gave the serious-
ness and circumstances of defendant's crimes no
more weight than was given to the factor by the trial
courts in *Black* and *Spearman.* Defendant has demon-
strated no abuse of discretion in the trial court's deci-
sion to sentence him as an adult.

Affirmed.

O'CONNELL, J. (*concurring*). I concur with Judge
BATZER's opinion. I write separately to address briefly
the dissent.

The dissent contends that "the trial court should
have considered accessory after the fact as a cognate
lesser included offense under the facts of this case
because that offense is related to the arson murder
offenses and of the same class or category as those

offenses . . . ." *Post*, p 547. In support of the conclusion that accessory activities are of the same class or category as arson and murder, the dissent asserts: "The purpose of making accessory activities a crime is to prevent the underlying crime itself by facilitating its detection and prosecution. Prohibitions against both accessory activities and underlying crimes fulfill the same social objective, i.e., preventing the underlying criminal activity . . . ." *Post*, p 547, n 1.

I respectfully disagree. As explained by our Supreme Court in *People v Lucas*, 402 Mich 302, 304; 262 NW2d 662 (1978), quoting Perkins, Criminal Law (2d ed), p 667, an accessory after the fact is "one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." An accessory after the fact is punished because he obstructs the path of justice, rendering societal retribution less assured. An accessory is not punished in a misguided effort to deter another individual, the perpetrator of the underlying crime, from committing the crime.

BANDSTRA, J. *(concurring in part and dissenting in part)*. I concur in parts I, III, and IV of Judge BATZER's opinion, but dissent from part II.

Defendant requested a jury instruction with respect to the offense of accessory after the fact. The trial court denied this request, reasoning that, under *People v Karst*, 118 Mich App 34; 324 NW2d 526 (1982), no accessory after the fact instruction was required because defendant had not been separately charged with that offense. The trial court also concluded that accessory after the fact was not a cognate lesser included offense.

As Judge BATZER notes, analysis under *Karst* was completely inappropriate. *Ante*, p 532, n 1. Under the correct legal analysis, accessory after the fact is not a necessarily included lesser offense, because evidence showing that defendant participated in the arson murders either as a principal or an aider and abettor would not necessarily also show that he participated in later attempts to conceal those offenses. *People v Beach*, 429 Mich 450, 460-464; 418 NW2d 861 (1988). However, the trial court should have considered accessory after the fact as a cognate lesser included offense under the facts of this case because that offense is related to the arson murder offenses and of the same class or category as those offenses, while containing elements not necessarily found in the higher offenses. *Id.; People v Usher*, 196 Mich App 228, 232-234; 492 NW2d 786 (1992).[1] When an instruction relative to this cognate lesser included offense was requested, the trial court should have examined the evidence to determine whether it would support a conviction of accessory after the fact. *People v Hendricks*, 446 Mich 435, 442-444; 521 NW2d 546(1994); *People v Pouncey*, 437 Mich 382, 387; 471 NW2d 346 (1991); *Beach, supra* at 464.

The defense theory in this case was that Jacinto (Jason) Ricco was the arsonist who caused the three

---

[1] Citing *People v Hendricks*, 446 Mich 435, 447; 521 NW2d 546 (1994), the majority concludes that accessory after the fact is not in the "same class or category" as the underlying offense because it does not "protect the same societal interests as" the underlying offense. *Ante*, p 536, n 3. I disagree. The purpose of making accessory activities a crime is to prevent the underlying crime itself by facilitating its detection and prosecution. Prohibitions against both accessory activities and underlying crimes fulfill the same social objective, i.e., preventing the underlying criminal activity, and accessory offenses are properly considered cognate lesser offenses under the language from *Hendricks* that the majority relies upon.

deaths. Defendant's trial counsel cross-examined the prosecutor's witnesses from the neighborhood to emphasize their testimony that Jason Ricco was a well-known neighborhood troublemaker and bully. Two witnesses corroborated each other's testimony that, before the arson, they had refused Jason Ricco's request that they assist him in blowing up a house or in throwing a firebomb into a neighborhood backyard. One of Jason's friends testified that Jason had told him, on the day immediately preceding the arson, that he had thrown gasoline-filled pop bottles at another building on the street.

There was also testimony showing that Jason Ricco's hostility was directed in particular against the victims of the arson, the Rollie family. Both Willie Rollie and Cynthia Rollie, the father and mother of the children who died in the fire, testified that Jason Ricco had repeatedly insulted their family with racial slurs, made threats against them, and thrown things at their house. Jason's continuing feud with the Rollies had resulted in the police being called on a number of occasions. Sometime before the arson, neighbors overheard Jason Ricco yelling from the street toward the Rollies' home, "I will kill you." Ryan Rollie, the victims' brother, testified that Jason Ricco was angry with him because of an incident that occurred the day before the fire.

During closing argument, defense counsel contended that the prosecutor had failed to overcome the presumption of innocence regarding defendant's participation in the arson, especially in light of all this evidence showing that Jason Ricco, not defendant, had the history and motivation that might likely result in that kind of crime against the Rollies. Defense

counsel argued that, in contrast to Jason Ricco, defendant had no history of animosity toward the Rollies or experience with firebombs. Defense counsel stressed that the testimony suggesting that defendant directly participated in the crime was either that of Jason Ricco, who had an obvious incentive to saddle defendant with the blame, or that of other witnesses who also had an incentive to protect Jason or assist the prosecution and who, in any event, had to rely solely on Jason's account of what occurred at the scene of the arson.

On the other hand, a number of witnesses did testify from firsthand observation that defendant engaged in activities to cover up the crime after he and Jason Ricco returned to the Ricco house. A number of witnesses testified that they overheard defendant and Jason Ricco in the Riccos' bathroom immediately after the fire started, flushing the toilet repeatedly and speaking about getting rid of evidence. These accounts were corroborated by a subsequent investigation showing that there was residue from a flammable substance in the toilet bowl. There was evidence that Jason Ricco had asked defendant to conceal a gasoline can in one of the bedrooms and that defendant had done so. Finally, witnesses testified that Jason Ricco and defendant worked together to prevent Jason Ricco's older sister, Yolanda, from immediately calling the fire department or police concerning the fire.

During closing argument, defendant's counsel acknowledged this evidence showing that defendant had, with Jason Ricco, attempted to conceal the crime after it occurred. However, he cautioned the jury that the court would instruct them that, even if

they believed that evidence, it would not constitute aiding and abetting the arson. Instead, to find aiding and abetting, defense counsel argued that "any participation has to be done . . . before or during the commission of the crime." Consistent with that argument, defense counsel requested an accessory after the fact instruction, reasoning that the jury could

> have a reasonable doubt about whether or not the defendant participated in the burning of the house, but could find that he took certain actions back at the Ricco house by moving the gas can and participating in the disposal of flammable liquid in the toilet, knowing that the fire had been set, and therefore, be an accessory after the fact as a lesser offense.

A review of the trial transcript, as outlined above, convinces me that a factual question was presented for the jury regarding whether defendant assisted the commission of the arson before, during, or after it was completed. The jury had the right "to believe or disbelieve any or all" of the testimony presented by the prosecution. *People v Chamblis*, 395 Mich 408, 420; 236 NW2d 473 (1975).[2] The jury could have concluded that the prosecution failed to overcome

---

[2] *Chamblis* thus refutes the prosecution's argument on appeal that "if the testimony of the witnesses linking Defendant to this horrible crime is to be believed at all . . . , it clearly links Defendant as a direct participant and not as someone merely helping someone else to cover up his criminal activities after the fact." *Chamblis* also undermines the prosecution's complaint, adopted by the majority, that defendant's argument "would mean that an accessory after the fact instruction would be required in virtually every case in which there is any evidence that the accused tried to cover his or her tracks." *Chamblis* apparently adopted the view expressed in Comment, *Jury Instructions on Lesser Included Offenses*, 57 NW UL Rev 62, 67 (1962), that the rule announced would mean that " 'virtually every case will involve possible convictions on lesser offenses,' " thereby necessitating instructions with regard to those offenses. *Chamblis, supra* at 422.

defendant's presumption of innocence relative to the greater offenses for which instructions were provided (felony murder, arson, second-degree murder, involuntary manslaughter) because of a reasonable doubt regarding defendant's actual involvement at the scene of the arson. The jury could have also, quite consistently, concluded that there was sufficient evidence to convict defendant as an accessory after the fact on the basis of the more compelling evidence of defendant's participation in efforts to conceal the crime following the firebombing. It was not necessary for defendant to present a "rebuttal or impeachment of the people's evidence" with regard to the greater offenses as a prerequisite to requesting the accessory after the fact instruction. *Id.* at 422. Instead of looking at whether there is evidence to refute the greater charge, the analysis properly centers on whether the evidence would support the lesser charge for which an instruction has been requested.[3]

> In determining whether the instruction should be given, the trial court should consider whether, if the defendant had been originally charged only on the lesser offense, the evidence adduced at trial would have supported a guilty verdict on that charge. If it would have, the requested instruction must be given. [*Id.* at 423.]

If defendant had been originally charged as an accessory after the fact in this case, the evidence adduced at trial would clearly have supported a guilty verdict with regard to that charge. Defendant was entitled to

---

[3] This rule in Michigan is "more protective of defendants" than the approach used in a number of states and the federal system where "the evidence must permit a jury rationally to . . . *acquit* of the offense charged." *Beach, supra* at 464 (emphasis in original); see also *Hendricks, supra* at 448, n 18.

the requested instruction regarding accessory after the fact, and the trial court erred in failing to grant that request.

Apparently anticipating the possibility of this conclusion, the prosecution argues that this was harmless error not warranting reversal. Michigan law does recognize a harmless-error doctrine in some cases where instructions concerning lesser included offenses are improperly denied, as explained by our Supreme Court in *People v Richardson*, 409 Mich 126; 293 NW2d 332 (1980), and *Beach, supra*.[4] The majority would conclude the doctrine applies here; I disagree.

In *Richardson*, a defendant was convicted of first-degree murder. The jury had also been instructed with respect to second-degree murder and voluntary manslaughter, but the trial court had denied a defense request for instructions concerning the additional lesser offenses of involuntary manslaughter and reckless use of a firearm causing death or injury. *Richardson, supra* at 134. The Supreme Court determined that there was sufficient evidence to support convictions of involuntary manslaughter or reckless use of a firearm causing death or injury and that, accordingly, the trial court had erred in denying the requested instructions. *Id.* at 135-138. The Court further determined that this error could not be considered harmless merely because of "the jury's verdict of guilty on a higher offense where the option was available to

---

[4] The Supreme Court also considered this issue in *People v Rochowiak*, 416 Mich 235; 330 NW2d 669 (1982). However, analysis is appropriately limited to *Richardson* and *Beach* because no majority of the justices participating in *Rochowiak* agreed with respect to the reasoning and it is not "an authoritative interpretation" binding under the doctrine of stare decisis. *Beach, supra* at 475, n 10.

convict on some lesser offense." *Id.* at 139. The Court reasoned that the three offenses of which the jury had been instructed all involved activity that included an intent to do great bodily harm or cause death. *Id.* at 140. In contrast, the two offenses of which the defendant's request for instructions had been denied involved conduct that was careless, reckless, or criminally negligent. *Id.* at 140-141. "Thus, the effect of the trial judge's refusal to instruct on the lesser offenses of involuntary manslaughter and reckless use of a firearm was to foreclose the jury's option to convict the defendant in accordance with his own testimony, evidence, and theory." *Id.* at 141. Because the jury was "deprived of any option to convict consistently with the defendant's testimony, evidence and theory," the trial court's refusal to give the lesser offense instructions was prejudicial error requiring reversal. *Id.*

In *Beach, supra* at 491, the Supreme Court again concluded that "[t]he existence of an intermediate charge that was rejected by the jury does not, of course, automatically result in an application of the [harmless-error doctrine]." Instead, the harmless-error doctrine applies only if "the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge." *Id.* Defendant Beach had been convicted of conspiracy to commit armed robbery, but was denied an instruction concerning conspiracy to commit larceny in a building. The jury had been instructed with respect to the lesser included offense of conspiracy to commit unarmed robbery, but rejected that charge. The Court reasoned that, in these circumstances, the trial court's

failure to give the instruction concerning conspiracy to commit larceny in a building was harmless error:

> If the jury had doubts about her guilt of the charged offense or if it concluded that the defendant was not planning to use force, it could have and undoubtedly would have, found her guilty of the instructed lesser included offense of conspiracy to commit unarmed robbery, which would represent a lesser use of force. Because it did not do so, we can conclude that it had no reasonable doubt as to the defendant's guilt of conspiracy to commit armed robbery. We believe that the jury's decision is a reasonable indication that the failure to give an instruction on the lesser included offense of conspiracy to commit larceny in a building was not prejudicial to the defendant. [*Id.* at 490-491.]

In other words, the issue Beach tried to place before the jury through the requested charge, i.e., whether less force than in an armed robbery had been used, had already been placed in issue by the instruction provided to the jury with regard to unarmed robbery. The jury had thus had an opportunity to consider the amount of force issue under the instructions given and, by rejecting the unarmed robbery option, indicated that it had decided against the defendant with regard to that issue. Thus, "the intermediate charge rejected by the jury . . . indicate[d] a lack of likelihood that the jury would have adopted the lesser requested charge." *Id.* at 491.

Under either the *Richardson* or the *Beach* analysis,[5] I would conclude that the trial court's failure to pro-

---

[5] Notwithstanding the Supreme Court's suggestion that *Richardson* might be "inconsistent" with *Beach, Beach, supra* at 470, n 9, I conclude that *Richardson* and *Beach* are consistent and that both are applicable under the facts of this case. As explained more fully below, under *Beach*, nothing in the jury's rejection of the intermediate charges for which instructions had been provided indicated that the jury would have

vide in this case the requested instruction concerning the offense of accessory after the fact was not harmless error. As discussed earlier, defendant's theory was that there was insufficient evidence to show he was involved with the arson murders as a principal or as an aider and abettor and that, even if the jury believed he had assisted in covering up the crime, that did not make him guilty of the arson murders. The failure to provide the requested instruction with respect to accessory after the fact thus improperly "foreclose[d] the jury's option to convict the defendant in accordance with his own" theory of defense. *Richardson, supra* at 141.

In contrast to *Beach*, the jury's failure to convict defendant of second-degree murder or involuntary manslaughter, of which it had been instructed, does not suggest in any way that the jury would have also failed to convict defendant of being an accessory after the fact had it been instructed with respect to that offense, as requested by defendant. By requesting this instruction, defendant attempted to place at issue the time at which he became criminally involved with the arson. That issue was not presented to the jury in its consideration of the charges for which instructions were provided. The differences between first-degree felony murder, second-degree murder, and involuntary manslaughter have to do with whether a felony (arson) was the act by which the victims had died, whether the requisite intent was negated (because of

---

rejected defendant's theory of the case, i.e., that any involvement he had was limited to attempts to conceal the arson murders after they had occurred. In other words, to use the *Richardson* approach, defendant's theory was not presented to the jury for consideration through the instructions that were provided, and, accordingly, the jury's decision cannot be construed as a rejection of the defense theory.

defendant's intoxication), and defendant's degree of culpability (for example, whether he caused the victim's death through gross negligence instead of an intentional act). These were separate questions, completely different from whether defendant became criminally involved with the arson murders only after they occurred. The jury's rejection of the intermediate charges of which instructions had been provided presents no indication whatsoever that the jury would have also rejected the lesser requested charge of accessory after the fact.

Our Supreme Court has recently noted the crucial importance of providing instructions with respect to lesser included offenses when they are warranted:

> "The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free. . . . The goal . . . , in other words, is to eliminate the distortion of the factfinding process . . . ." [*Hendricks, supra* at 447, quoting *Spaziano v Florida*, 468 US 447, 455; 104 S Ct 3154; 82 L Ed 2d 340 (1984).]

To illustrate this principle, the jury in the instant case may well have concluded that the lesser charges for which instructions were provided were not supported by the evidence, there being little to show defendant was intoxicated and nothing to suggest that the firebombing was the result of negligence. At the same time, the jury could also have concluded that defendant was guilty of assisting Jason Ricco by attempts to conceal the arson, though not guilty of the arson itself. If these were the jury's conclusions, the instructions provided required a choice between two wrong alternatives: setting defendant free or convicting him

of the intentional arson of which there was clear proof. To avoid this "distortion of the fact-finding process," defendant was entitled to an accessory after the fact instruction. The trial court erred requiring reversal in failing to so charge the jury.

I would reverse and remand for a new trial.