# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 16, 2014

Plaintiff-Appellee,

v

No. 318023
Cheboygan Circuit Court
LC No. 13-004680-FC

SIDNEY FORD EDWARDS, III,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant Sidney Ford Edwards III appeals by right his jury convictions of conspiracy to manufacture methamphetamine, MCL 333.7401(2)(b)(*i*) and MCL 750.157a, and four counts of operating or maintaining a controlled substance laboratory involving methamphetamine, MCL 333.7401c(2)(f). The trial court sentenced Edwards as a fourth habitual offender, MCL 769.12, to serve 7 to 40 years in prison for each conviction. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

Detective Jon Supernault testified that the investigation that led to Edwards' charges started with a tip from an informant that Kristopher Ayotte and Sarah Burnett were gathering materials to manufacture methamphetamine. Supernault said the investigation into their purchases led the officers to Ayotte's garage. Detective Steve Seccia testified that when officers arrived at the site, Ayotte was actively "cooking" methamphetamine. Seccia said he observed a green Mountain Dew bottle that Ayotte was using as a gas generator. They also found other evidence of methamphetamine production, including clear tubing, household lye, lithium battery hulls, coffee filter, tinfoil, and charcoal lighter. Detective Jason Varoni testified that they found Liquid Lightning drain opener and Morton salt. Varoni said they also found two different gas generators, indicating that more than one person cooked methamphetamine.

Burnett testified against Edwards at trial under a plea agreement. Although she testified that she did not see Edwards manufacture methamphetamine, Burnett's testimony implicated Edwards in the manufacture of methamphetamine along with Ayotte.

-1-

## II. JURY INSTRUCTION

Edwards first argues the trial court erred by failing to give an accomplice instruction regarding Burnett's trial testimony on its own initiative. Because Edwards did not object or otherwise preserve this claim of error, this Court's review is for plain error affecting Edwards' substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Absent a specific request, the trial court's failure to give an accomplice instruction does not require reversal when potential problems with an accomplice's credibility have been plainly presented to the jury. *People v Reed*, 453 Mich 685, 692-693; 556 NW2d 858 (1996). Here, Edwards' lawyer fully explored Burnett's credibility at trial. *Id.* at 692. His lawyer asked if the prosecutor and officers spoke to her "prior to today" about her testimony and she admitted that they had. Burnett indicated that it was part of her plea that she provide testimony in the case. Edwards' lawyer further attacked Burnett's credibility by cross-examining her about her past embezzlement conviction. And he made Burnett's credibility an issue in his closing argument.

The trial court also generally informed the jury on how to discern witness credibility by telling it to consider any bias, prejudice, personal interest, promise, threats, suggestions, special reasons to tell the truth or lie, or other influences that might have affected the witness' testimony. The court also told the jury that it may conclude that a witness lied and was free to accept none or part of a witness's testimony. These instructions were broad enough to cover concerns regarding accomplice cautionary testimony and sufficiently protected Edwards' rights. *People v Perry*, 218 Mich App 520, 526; 554 NW2d 362 (1996). Therefore, there was no plain error. *Carines*, 460 Mich at 773.

## III. HEARSAY

Edwards next contends that his conviction was based in part on inadmissible hearsay by Supernault and Varoni. Because Edwards' lawyer did not preserve this claim of error by objecting, our review is for plain error. *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). During the prosecutor's direct examination, Supernault testified that he heard Ayotte saying Edwards "had injected or booted" the methamphetamine. Supernault also said that Ayotte stated he and Edwards had a disagreement regarding adding water during the production of the methamphetamine. Varoni similarly testified that he heard Ayotte mention that Edwards told Ayotte that Edwards had "cooked" methamphetamine. These statements were inadmissible hearsay. The statements were made in court by the detectives, not by the declarant. Moreover, the statements were offered to prove defendant was guilty of making methamphetamine, as shown by the prosecution's closing argument.

MRE 801(d)(2) provides that a statement is not hearsay if it is offered against a party and if the statement is the party's own statement. See *People v Kowalak*, 215 Mich App 554, 556-557; 546 NW2d 681 (1996). Ayotte was not a party or Edwards' representative and, therefore, his statements to the detectives were not admission under MRE 801(d)(2)(A). Moreover,

Ayotte's statements were not coconspirator's statements under MRE 801(d)(2)(E), because they were made to the detectives while Ayotte was in custody, not during the course of the conspiracy or in the furtherance of it. Additionally, the testimony did not fall within any hearsay exception. MRE 804(b)(3) excludes from the hearsay rule statements made against the declarant's penal interest. However, MRE 804(b)(3) requires that the declarant be unavailable as a witness. Here, Ayotte was available—he testified subject to cross-examination.

Improperly admitted hearsay evidence is harmless when it is merely cumulative of other properly admitted evidence. *People v Van Tassel (On Remand)*, 197 Mich App 653, 655; 496 NW2d 388 (1992). In this case, there was strong evidence of Edwards' guilt. Officers confirmed, through store records and videotapes, that Edwards and other members of the conspiracy purchased items used to manufacture methamphetamine at Wal-Mart and Walgreens. Specifically, at Wal-Mart, Edwards purchased Morton salt and Liquid Lightning, and Burnett bought pseudoephedrine. At Walgreens, Edwards purchased pseudoephedrine and cold packs. A Wal-Mart receipt, a recipe for methamphetamine, and clear tubing were found in a bedroom at Burnett's residence where Edwards was staying. Given the other evidence that was properly admitted, Edwards cannot establish that the admission of this testimony prejudiced his trial. *Carines*, 460 Mich at 763.

Edwards also argues the cumulative impact of the improper admission of hearsay and the failure to provide the accomplice instruction warrants granting a new trial. "The cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). However, only "actual errors" are aggregated when reviewing a cumulative error argument. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Because the trial court did not plainly err in failing to give the requested instruction and the admission of the hearsay testimony did not affect Edwards' substantial rights, his cumulative error argument fails. See *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008).

## IV. INEFFECTIVE ASSISTANCE

Edwards also argues that his lawyer was ineffective for not demanding an accomplice cautionary instruction and for failing to object to the admission of hearsay testimony. Because the trial court did not hold an evidentiary hearing on Edwards' claim that he did not receive the effective assistance of counsel, our review is limited to mistakes apparent on the existing record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

In order to establish his claim of ineffective assistance, Edwards must show that his lawyer's performance did not meet an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Defense counsel has wide discretion as to matters of trial strategy because counsel may be required to take calculated risks to win a case. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Edwards must overcome the presumption that the challenged conduct might be considered sound trial strategy and must further show that he was prejudiced by the error. *People v Pickens*, 446 Mich 298, 312-315; 521 NW2d 797 (1994). This Court will not substitute its judgment for that of trial counsel on matters of strategy, nor will it employ the benefit of

hindsight to assess the competence of counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Regarding the jury instructions, Edwards argues that his lawyer should have requested an accomplice instruction and there was no possible strategic reason for this because the entire defense theory hinged on adequately challenging Burnett's credibility. Nevertheless, Edwards failed to rebut the presumption that his counsel's actions amounted to trial strategy. Edwards' position at trial was that Burnett's testimony was not trustworthy because she had a motive to lie. Although the trial court did not provide an accomplice instruction, the court gave the general instructions regarding assessing witness testimony, which provided criteria for evaluating the witnesses' credibility, including concerns such as bias, prejudice, and personal interest. Therefore, the value of the cautionary accomplice instruction would have been minimal, and Edwards' lawyer could reasonably have concluded that the general instruction was adequate. Furthermore, an accomplice instruction would have also applied to Ayotte's testimony, which was beneficial to Edwards. Thus, his lawyer's performance did not fall below an objective standard of reasonableness.

Edwards has also not shown a reasonable probability that the result of the proceedings would have been different had his lawyer requested the instruction. The general instructions provided adequate guidance to the jury. In addition, the prosecution even acknowledged Burnett's credibility problems. Given the limited value of the instruction under the facts present here, any error would not warrant relief.

We agree, however, that Edwards' lawyer should have objected to the improper hearsay testimony. Nevertheless, for similar reasons, that error would not warrant relief. The statements could have been admitted as prior inconsistent statements after Ayotte testified and was afforded an opportunity to deny or explain the statements. See MRE 613(b). Furthermore, other properly admitted evidence was strong enough for the jury to convict notwithstanding the hearsay. Thus, Edwards cannot show that there was a reasonable probability that the outcome of the trial would have been different had counsel objected to the hearsay.

## V. SENTENCING

Finally, relying on the decision in *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), Edwards argues that the trial court erred when it relied on facts not found by the jury to score his sentencing guidelines. However, this Court has held that *Alleyne* does not apply to Michigan's sentencing scheme. *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013). Consequently, this claim is without merit.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-4-