# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FUTURA KRISHONNA WADE,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2016

No. 328298
Wayne Circuit Court
LC No. 14-010048-01-FC

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

Defendant was charged with second-degree murder, MCL 750.317. A jury convicted her of that charge, and she was sentenced to a term of 25-50 years of imprisonment. Because the prosecutor's closing argument improperly commented on defendant's exercise of her right not to testify and shifted the burden of proof on self-defense, we reverse and remand for a new trial.

Decedent Kenneth Towns and defendant had been romantically involved for approximately one year and lived together. Defendant's daughter, Tyra Simpson and defendant's adult son, Juan, who is cognitively impaired, lived across the street. Simpson was the central witness in the case and testified about the incident. According to her testimony, sometime after midnight she awoke to the sound of her mother and Towns in a heated argument, and she left her bed and went to see what was happening. Once outside, she saw defendant, Towns, and Juan in the street. Simpson stated that Towns was calling her mother vulgar names and described him as drunk and in a ranting rage. According to Simpson, Towns was "coming after my brother with a toy stroller" as if to attack him and that, to protect her brother, she ran over and attempted to get the stroller away from Towns. She stated that she and Towns were "tussling" over the stroller and that Towns pushed her twice, the second time knocking her to the ground. At that point, according to her testimony, Juan ran around the corner and Towns went after him but did not catch him. Juan briefly reappeared and Towns "picked up . . . a brick or rock out of the neighbor's driveway" and started back towards Juan, but Juan again ran away. Simpson testified that Towns then yelled "[S]ince I can't get to your son I'm going to get to your daughter" and starting coming at her with the rock. She got in her mother's car and drove around the corner but immediately returned. When she returned she saw "[Towns] after my

-1-

mother," but then Towns stopped chasing her and went back into his house. She testified that during the incident she heard Towns yell, "I'm going to kill this bitch."[1]

According to Simpson, after Towns went back in the house, defendant, who was crying, got in her car with Juan and drove away. Simpson went back to her house. The next morning, she went across the street to the house where Towns and her mother lived. There she found Towns dead on the floor just inside the door. She testified that she later spoke with defendant about the events. According to Simpson, defendant told her that when Simpson drove around the corner because Towns had threatened her with the rock, Towns went after defendant with the rock, and she stabbed him once with a pocket knife that she carried. Simpson testified that defendant told her that Towns was "coming at her with something in his hand, so she jabbed him" but did not know where the knife had struck him.[2]

The prosecution also called as a witness, a neighbor, who viewed some of the event. The neighbor testified that he lived three houses away from decedent's home and that on the night in question he was awakened by a commotion out on the street. He looked out his window and saw the decedent arguing with defendant and her son and daughter, but he did not see any physical contact. He stated that all four were yelling, and he presumed they had been drinking, so he went back to bed. When he stopped watching, they were all still in the street, but Towns was walking back towards his house. The prosecution also called decedent's mother, who testified that the relationship between her son and defendant was contentious and that a day or two before Towns' death, they had been drinking with her at her house, had a serious argument, and left separately. She also testified that when she went to decedent's house after his death, it appeared to have been ransacked, and she could not find decedent's jewelry, his two rifles or his handgun.[3]

On appeal, defendant challenges her conviction on several grounds: prosecutorial misconduct, ineffective assistance of counsel, and insufficient evidence. She also raises two sentencing issues. Because we agree that reversal is required on the grounds of prosecutorial misconduct, we do not address the other issues.

The proofs in this case were far from extensive. The testimony of Simpson provided most of the evidence on which each side relied. No witness saw the stabbing, but Simpson testified that defendant admitted that she had "jabbed" decedent with her pocket knife. The only issue in real dispute was whether defendant acted in self-defense, and Simpson, though a

---

[1] Given the form of the question asked by defense counsel, it was not clear whether Simpson heard Towns say this while he was chasing defendant or at some other time during the incident.

[2] According to the pathologist, Towns died from a single stab wound to the chest by a knife with one sharp edge and one blunt edge consistent with a pocket knife.

[3] The other prosecution witnesses did not offer any testimony relevant to the events surrounding Towns' death. The witnesses were the police officer who responded to Simpson's call upon the discovery of Towns' body, the police officer who obtained phone records, and the medical examiner. Defendant called no witnesses.

prosecution witness, testified in support of the self-defense claim. She testified that defendant stated that decedent was coming after her with the rock and that she "jabbed" him one time with the pocket knife when he reached her. Simpson also described the earlier part of the altercation, decedent's rage and drunkenness, his attack on her brother, herself, and defendant, and his statement that he was going to "kill this bitch." Defendant met her burden of going forward with evidence in support of her claim of self-defense. *People v Reese*, 491 Mich 127, 155-156; 815 NW2d 85 (2012). "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

In closing argument, the prosecutor made several improper comments concerning the fact that defendant did not testify, and he cited that lack of testimony as grounds to reject self-defense. His comments asserted, or at least strongly implied, that the burden of proof as to self-defense was on the defendant.

Defendant preserved this issue by objecting and requesting a curative instruction after the jury had been instructed but before it began deliberating. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "[P]reserved allegations of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). We examine the prosecutor's remarks in context on a case-by-case basis. *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002).

A criminal defendant has "a right to remain silent at trial," *People v Balog*, 56 Mich App 624, 629; 224 NW2d 725 (1974), "and may elect to rely on the 'presumption of innocence.' " *People v Fields*, 450 Mich 94, 108; 538 NW2d 356 (1995) (footnote omitted). Because a defendant is presumed innocent until proven guilty, a prosecutor "may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant to prove [her] innocence." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). Consequently, "[a] prosecutor may not comment upon a defendant's failure to testify." *People v Perry*, 218 Mich App 520, 538; 554 NW2d 362 (1996). A prosecutor's "comment on the defendant's failure to present evidence [is improper] because it is an attempt to shift the burden of proof." *People v. Fyda,* 288 Mich App 446, 464; 793 NW2d 712 (2010).

During his closing argument, the prosecutor stated:

*For self-defense to work for Ms. Wade there is [sic] a number of parameters that have to be met* and she has to have honestly and reasonably believed that dead [sic] force was necessary at that moment in order to prevent imminent death or great bodily harm.

*Now, Ms. Wade didn't testify you don't know what was in her mind. We have no idea what she thought. We have no idea what her beliefs was [sic] honest or otherwise.*

That's the record that you are left with as you try to think about these questions. *When you look at the self-defense instruction and it tells you that the*

*defendant has to have honestly and reasonable believed ask yourself gosh what did she believe.*

You can certainly and I don't know what Mr. Cooper will argue I'm not going to take up his words but you can certainly infer that if in fact Mr. Towns was coming at her with a rock maybe that's the honestly and reasonably believed maybe that was it.

*Maybe that is but we don't know that from Ms. Wade we don't know that.* [Emphasis added.]

On rebuttal the prosecutor again stated:

As we sit here to end of this trial nobody knows what was in her mind. Except one person, I don't and you don't. So when you ask yourself did she have an honest and reasonable belief? Gosh, I don't know. I don't know.

The prosecutor's statements that the jury could not know what was in defendant's mind because she did not testify were improper commentary. The error was magnified by the statement asserting that "for self-defense to work for Ms. Wade there [are] a number of parameters that have to be met" one of which is establishing what her subjective belief was. By linking the need for the defense to prove defendant's state of mind with the failure of defendant to testify, the prosecution was arguing that the lack of testimony was not merely a factor to be held against her, but was in fact fatal to the self-defense theory as defendant could only meet this burden by taking the witness stand to testify. These statements created an improper presumption against defendant contrary to her constitutional right not to testify.

An additional error occurred when the prosecutor asserted that defendant had failed to tell the police that she acted in self-defense. The prosecutor stated:

And Ms. Futura Wade never told the police hey listen here's what happened. A lot of times I think a person would be justified to look at circumstances and say wait a minute they're hiding something.

Why do people hide things? Why do I not tell somebody about something I have done? Because a couple of reasons and this comes back to the idea that we're all human here.

You don't tell because you are ashamed or embarrassed or know you did something wrong.

Evidence of a defendant's non-custodial silence is permitted in some circumstances and in such cases, the prosecutor may argue that the silence is evidence of guilt. *Salinas v. Texas*, 133 S. Ct. 2174, 2177-2178; 186 L. Ed. 2d 376 (2013). However, in this case there was no evidence presented that defendant failed to tell the police that she acted in self-defense. No officer testified to any conversation or interview of defendant or of any attempt to conduct an interview whether in or out of custody. Thus, the only "silence" by defendant to which the jury

could apply this argument to was her failure to testify at trial. The resulting implication was that defendant's failure to testify was evidence that she "[knew she] did something wrong."

"[T]he appropriate response to an objection for an improper remark by a prosecutor is the issuance of a curative instruction," *People v Mann*, 288 Mich App 114, 121-122; 792 NW2d 53 (2010) (footnote omitted), which generally is considered "sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements" *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The court gave its standard instructions immediately after the prosecution's rebuttal argument after which, at a sidebar, the court asked the attorneys if they "are both satisfied with the charges." The following colloquy then occurred:

> DEFENSE COUNSEL: Judge, I'm concerned that during closing arguments [the prosecutor] mentioned that my client had not taken the stand. And so I will ask for a reminder to the jurors that they're not to consider the fact that she did not testify and.

> THE COURT: I read that.

> DEFENSE COUNSEL: And that he should be thoroughly chastised for doing that.

> THE COURT: You may return to your seats.

The Court then allowed the jury to begin deliberations.

Under the circumstances of this case we do not agree that the standard jury instructions constituted a "curative instruction." Where the prosecution's argument specifically raises defendant's failure to testify and implies that the defendant has the burden of proof, even if only as to self-defense, the error is not cured unless the court specifically addresses the improper remarks and directs the jury to disregard them. In other words, for the instruction to have been "curative" in this case, the court would have had to tell the jury what it was to disregard, to specifically address the statements about defendant's failure to testify, and to clarify that any lack of evidence weighed against the party with the burden of proof, as opposed to the party who did not bear that burden.[4]

In *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994), the Supreme Court described a curative instruction as a statement by the trial court that would have both "cautioned the prosecutor and instructed the jury" on the prosecutor's improper comment. See *id.* The United States Supreme Court has similarly described the role a curative instruction is to play in regards to improper prosecutorial statements in *Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S. Ct. 1868, 1872, 40 L. Ed. 2d 431 (1974) stating:

---

[4] Specifically, because defendant met her initial burden of coming forward with evidence of self-defense, any lack of additional evidence on defendant's state of mind would properly be considered to the prosecution's detriment.

In addition, the trial court took special pains to correct any impression that the jury could consider the prosecutor's statements as evidence in the case. The prosecutor, as is customary, had previously told the jury that his argument was not evidence, and the trial judge specifically re-emphasized that point. Then the judge directed the jury's attention to the remark particularly challenged here, declared it to be unsupported, and admonished the jury to ignore it. [Footnotes omitted.]

Further underscoring the difference between a curative instruction and a jury instruction, *Black's Law Dictionary* (10th ed) defines a "curative instruction"[5] as "[a] court's instruction to the jury to disregard something that should not have happened in court, such as an improper outburst, misconduct by a lawyer, or testimony that flouts an order in limine."[6] See also, *People v Stevens*, 498 Mich 162, 177; ___ NW2d ___ (2015) (stating that although the standard instructions inform the jury that a judge's comments do not constitute evidence, a curative instruction should be given when there is particular conduct that may give rise to the appearance of bias.). The trial court's reading of the standard jury instructions did not serve as a curative instruction sufficient to remedy the prosecutor's improper comments concerning the burden of proof and the fact that defendant exercised her right not to testify.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro

---

[5] The definition of "curative instruction" is contained as a sub-definition under "jury instruction." *Black's Law Dictionary* (10th ed).

[6] Additionally, in the unpublished case of *People v Manuel*, unpublished opinion of the Court of Appeals issued July 18, 1997 (Docket No. 186641), p 3, we recognized that a proper curative instruction must actually address the specific error that occurred finding that the trial court's instruction did not cure the prosecutor's improper comments when "the instruction did not even address the prosecution's improper references." More recently in *People v Johnson*, unpublished opinion of the Court of Appeals issued July 14, 2016 (Docket No. 325110), p 4-5 we held that when the prosecution impermissibly shifted the burden of proof the mere instruction to the jury that attorney comments were not evidence did not cure the error. *Manuel* and *Johnson* are not binding precedent, but we find their conclusions persuasive in this case. *People v Daniels*, 311 Mich App, 257, 268 n 4; 874 NW2d 732 (2015).